HOWLETT, A MINOR, BY AND THROUGH HOWLETT, HIS
MOTHER, NATURAL GUARDIAN, AND NEXT FRIEND *v.* ROSE,
AS SUPERINTENDENT OF SCHOOLS FOR
PINELLAS COUNTY, FLORIDA, ET AL.

No. 89–5383.   Argued March 20, 1990—Decided June 11, 1990

STEVENS, J., delivered the opinion for a unanimous Court.

*Gardner W. Beckett, Jr.*, argued the cause for petitioner. With him on the briefs were *Steven R. Shapiro* and *Steven H. Steinglass*.

*Charles Rothfeld* argued the cause for respondents. On the brief was *Bruce P. Taylor*.*

JUSTICE STEVENS delivered the opinion of the Court.

Section 1 of the Civil Rights Act of 1871, Rev. Stat. § 1979, now codified as 42 U. S. C. § 1983, creates a remedy for violations of federal rights committed by persons acting under color of state law.[1] State courts as well as federal courts have jurisdiction over § 1983 cases. The question in

---

*Briefs of *amici curiae* urging affirmance were filed for the National Association of Counties et al. by *Benna Ruth Solomon* and *Charles Rothfeld;* and for the Washington Legal Foundation et al. by *Daniel J. Popeo* and *Richard A. Samp*.

[1] Title 42 U. S. C. § 1983 provides in relevant part:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

this case is whether a state-law defense of "sovereign immunity" is available to a school board otherwise subject to suit in a Florida court even though such a defense would not be available if the action had been brought in a federal forum.

I

Petitioner, a former high school student, filed a complaint in the Circuit Court for Pinellas County, Florida, naming the School Board of Pinellas County and three school officials as defendants. He alleged that an assistant principal made an illegal search of his car while it was parked on school premises and that he was wrongfully suspended from regular classes for five days. Contending that the search and subsequent suspension violated rights under the Fourth and Fourteenth Amendments of the Federal Constitution and under similar provisions of the State Constitution, he prayed for damages and an order expunging any reference to the suspension from the school records.

Defendants filed a motion to dismiss on various grounds, including failure to exhaust state administrative remedies.[2] The school board also contended that the court was without jurisdiction to hear the federal claims—but not the state claims—because the Florida waiver-of-sovereign-immunity statute did not extend to claims based on § 1983. App. 13–14. The Circuit Court dismissed the complaint with prejudice, citing a state case requiring state-law challenges to be first presented to the District Court of Appeal and the Florida Supreme Court decision in *Hill* v. *Department of Corrections*, 513 So. 2d 129 (1987). App. 19.

The District Court of Appeal for the Second District affirmed the dismissal of petitioner's § 1983 claim against the

---

[2] The defendants did not call into question the school board's potential liability if the actions of the school officials violated the Constitution. The school board, of course, could only be held liable if, as a matter of state law, it had delegated final decisionmaking authority in this area to the school principal and assistant principal. See *St. Louis* v. *Praprotnik*, 485 U. S. 112, 123 (1988) (opinion of O'CONNOR, J.).

school board.[3]  It held that the availability of sovereign immunity in a § 1983 action brought in state court is a matter of state law, and that Florida's statutory waiver of sovereign immunity did not apply to § 1983 cases.  The court rejected the argument that whether a State has maintained its sovereign immunity from a § 1983 suit in its state courts is a question of federal law.  It wrote:

> "[W]hen a section 1983 action is brought in *state* court, the sole question to be decided on the basis of *state* law is whether the state has waived its common law sovereign immunity to the extent necessary to allow a section 1983 action in state court.  *Hill* holds that Florida has not so waived its sovereign immunity.  We therefore do not reach appellant's second issue in this case, i. e., whether under *federal* law a Florida school board is immune from a section 1983 law.  There is no question under Florida law that agencies of the state, including school boards and municipalities, are the beneficiaries of sovereign immunity."  537 So. 2d 706, 708 (1989) (emphasis in original).

The Court of Appeal acknowledged our holding in *Martinez* v. *California*, 444 U. S. 277 (1980), that a State cannot immunize an official from liability for injuries compensable under federal law.  It held, however, that under *Hill* a State's invocation of a "state common law immunity from the use of its courts for suits against the state in those state courts" raised "purely a question of state law."  537 So. 2d, at 708.  The Florida Supreme Court denied review.  545 So. 2d 1367 (1987).  In view of the importance of the question decided by the Court of Appeal, we granted certiorari.  493 U. S. 963 (1989).

---

[3] The parties did not brief, and the District Court of Appeal did not address, petitioner's claims under the State Constitution or against the individual defendants.  See Brief for Petitioner 4, n. 5; Brief for Respondents 1–2.

## II

The question in this case stems from the Florida Supreme Court's decision in the *Hill* case. In that case, the plaintiff sought damages for common-law negligence and false imprisonment and violations of his constitutional rights under § 1983 from the Florida Department of Corrections for the conduct of one of its probation supervisors. Hill argued that the department was a "person" under § 1983, that it was responsible for the actions of its supervisor, and that it was subject to suit in the Circuit Court pursuant to the Florida waiver of sovereign immunity. Fla. Stat. § 768.28 (1989).[4] That statute provides that the State and its subdivisions, including municipalities and school boards, § 768.28(2), are subject to suit in circuit court for tort claims "in the same manner and to the same extent as a private individual under like circumstances," § 768.28(5).[5] Although the terms of the waiver

---

[4] The statute expanded the protection of sovereign immunity in some respects and narrowed it in others. See *Cauley* v. *Jacksonville*, 403 So. 2d 379 (Fla. 1981). Before the passage of § 768.28, the doctrine had been cast into serious doubt. We have previously noted that Florida led the States in the abrogation of municipal immunity:

"The seminal opinion of the Florida Supreme Court in *Hargrove* v. *Town of Cocoa Beach*, 96 So. 2d 130 (1957), has spawned 'a minor avalanche of decisions repudiating municipal immunity,' which, in conjunction with legislative abrogation of sovereign immunity, has resulted in the consequence that only a handful of States still cling to the old common-law rule of immunity for governmental functions." *Owen* v. *City of Independence*, 445 U. S. 622, 646, n. 28 (1980) (citation omitted).

[5] Florida considered common-law sovereign immunity to be "jurisdictional." See, *e. g., Schmauss* v. *Snoll*, 245 So. 2d 112 (App. 3d Dist. 1971). Since the enactment of the statute, several courts have held that sovereign immunity is jurisdictional, see, *e. g., Kaisner* v. *Kolb*, 509 So. 2d 1213, 1215, n. 2 (App. 2d Dist. 1987), rev'd on other grounds, 543 So. 2d 732 (1989); *Sebring Utilities Comm'n* v. *Sicher*, 509 So. 2d 968, 969 (App. 2d Dist. 1987); *State Dept. of Highway Safety and Motor Vehicles* v. *Kropff*, 491 So. 2d 1252, 1254, n. 1 (App. 3d Dist. 1986), but at least one court has come to the opposite conclusion, see *Hutchins* v. *Mills*, 363 So. 2d 818, 821 (App. 1st Dist. 1978); see also *Penthouse, Inc.* v. *Saba*, 399 So. 2d 456, 458, n. 2 (App. 2d Dist. 1981) ("Discretionary acts do not give rise

could be read narrowly to restrict liability to claims against the State in its proprietary capacity, the Florida courts have rejected that interpretation.[6] In 16 cases arising under Florida statutory and common law, the State Supreme Court has held that the State may be sued in *respondeat superior* for the violation of nondiscretionary duties in the exercise of governmental authority. The Florida courts thus have entertained suits against state agencies for the violation of nondiscretionary duties committed in the performance of various governmental activities, including the roadside stop and arrest of an individual driving with an expired inspection sticker,[7] the negligent maintenance by city employees of a

---

to liability because they are not tortious. By definition, one who has discretion to act has no duty to act").

The statute makes the State liable in *respondeat superior* and provides that no officer, employee, or agent of the State, acting in the scope of employment, may be held personally liable in tort or be named as a defendant unless that person "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property." Fla. Stat. § 768.28(9)(a) (1989). Counsel for petitioner represented at oral argument that the individual defendants would be protected by the statute from a state tort law claim based on the actions involved in this case. Tr. of Oral Arg. 16.

[6] See, *e. g.*, *Department of Health and Rehabilitative Servs.* v. *Yamuni*, 529 So. 2d 258, 261 (Fla. 1988) ("We recede from any suggestion in *Reddish* that there has been no waiver of immunity for activities performed only by the government and not private persons. The only government activities for which there is no waiver of immunity are basic policy making decisions at the planning level"); *Commercial Carrier Corp.* v. *Indian River County*, 371 So. 2d 1010, 1016–1017 (Fla. 1979) (citing *Indian Towing Co.* v. *United States*, 350 U. S. 61, 64–65 (1955)). See also *Dunagan* v. *Seely*, 533 So. 2d 867, 869 (App. 1st Dist. 1988).

[7] See *Kaisner* v. *Kolb*, 543 So. 2d 732 (Fla. 1989). See also the statements in *Everton* v. *Willard*, 468 So. 2d 936, 938 (Fla. 1985) ("We recognize that, if a special relationship exists between an individual and a governmental entity, there could be a duty of care owed to the individual. This relationship is illustrated by the situation in which the police accept the responsibility to protect a particular person who has assisted them in the arrest or prosecution of criminal defendants and the individual is in

storm sewer system,[8] the failure of a state caseworker to detect and prevent child abuse,[9] the negligent maintenance of county swimming pools and failure to warn or correct known dangerous conditions,[10] and the failure to protect a prison inmate from other inmates known to be dangerous.[11]   Hill ar-

danger due to that assistance.   In such a case, a special duty to use reasonable care in the protection of the individual may arise").

[8] See *Slemp* v. *North Miami*, 545 So. 2d 256 (Fla. 1989).

[9] See *Yamuni*, 529 So. 2d, at 261.

[10] See *Avallone* v. *Board of County Commissioners*, 493 So. 2d 1002 (Fla. 1986) (negligent maintenance of swimming pool); *State Department of Transportation* v. *Webb*, 438 So. 2d 780 (Fla. 1983); *Perez* v. *State Department of Transportation*, 435 So. 2d 830 (Fla. 1983); *St. Petersburg* v. *Collom*, 419 So. 2d 1082 (Fla. 1982); *A. L. Lewis Elementary School* v. *Metropolitan Dade County*, 376 So. 2d 32 (App. 3d Dist. 1979).   The Florida courts will not entertain actions against the State for defects in the construction of a road or the decision to install or not to install traffic control devices in general not regulated by statute and "inherent in the overall plan."   See *State Department of Transportation* v. *Neilson*, 419 So. 2d 1071, 1077–1078 (Fla. 1982); *Ingham* v. *State Department of Transportation*, 419 So. 2d 1081 (Fla. 1982); see also *Harrison* v. *Escambia County School Bd.*, 434 So. 2d 316, 320 (Fla. 1983) ("[T]he statutory words 'most reasonably safe locations available' have no fixed or readily ascertainable meaning and . . . in deciding on the location of a school bus stop a school board makes a policy or planning level decision").

[11] See *Dunagan* v. *Seely*, 533 So. 2d 867 (App. 1st Dist. 1988); *Green* v. *Inman*, 539 So. 2d 614 (App. 4th Dist. 1989); *Hutchinson* v. *Miller*, 548 So. 2d 883 (App. 5th Dist. 1989); see also *State Dept. of Health and Rehabilitative Servs.* v. *Whaley*, 531 So. 2d 723 (App. 4th Dist. 1988) (negligent failure to take care of juvenile delinquent).   The circuit court also entertains actions against governmental entities for failure to supervise properly their staffs or warn of dangerous conditions in public parking lots and other facilities.   See *Daniele* v. *Board of County Comm'rs*, 375 So. 2d 1 (App. 4th Dist. 1979); *State Department of Transportation* v. *Kennedy*, 429 So. 2d 1210 (App. 2d Dist. 1983) (maintenance of a sidewalk); *Pitts* v. *Metropolitan Dade County*, 374 So. 2d 996 (App. 3d Dist. 1978) (negligence of police officers in failing to supervise adequately a parking lot when the plaintiff is attacked by a third party).

The sovereign immunity statute preserves immunity only from claims based on the negligent exercise of discretionary judgment.   See, *e. g.*, *Everton* v. *Willard*, 468 So. 2d 936 (Fla. 1985); *Reddish* v. *Smith*, 468 So.

gued that just as the State could be joined in an action for the violation of established state common-law or statutory duties, it was also subject to suit for violations of its nondiscretionary duty not to violate the Constitution. See *Owen* v. *City of Independence*, 445 U. S. 622, 649–650 (1980).

The trial court dismissed Hill's § 1983 claim but entered judgment on the jury's verdict in his favor on the common-law claims. On appeal, the District Court of Appeal affirmed the dismissal of the § 1983 claim and reversed the judgment on the common-law claim. It also certified to the Florida Supreme Court the question whether Florida's statutory waiver of sovereign immunity permitted suits against the State and its agencies under § 1983. *Department of Corrections* v. *Hill*, 490 So. 2d 118 (1986).

The State Supreme Court answered that question in the negative. *Hill* v. *Department of Corrections*, 513 So. 2d 129 (1987), cert. denied, 484 U. S. 1064 (1988). Without citing any of its own sovereign immunity cases and relying solely on analogy to the Eleventh Amendment and decisions of the courts of other States, the State Supreme Court held that the Florida statute conferred a blanket immunity on governmental entities from federal civil rights actions under § 1983. 513 So. 2d, at 133. It stated: "While Florida is at liberty to waive its immunity from section 1983 actions, it has not done so. The recovery ceilings in section 768.28 were intended to waive sovereign immunity for state tort actions, not federal civil rights actions commenced under section 1983." *Ibid.* The court thus affirmed the dismissal of the § 1983 claim but reversed the Court of Appeal's judgment on

2d 929 (Fla. 1985); *Trianon Park Condominium Assn., Inc.* v. *Hialeah*, 468 So. 2d 912 (Fla. 1985). Such immunity does not extend to the violation of constitutional duties. See *Trianon Park*, 468 So. 2d, at 919 ("The judicial branch has no authority to interfere with the conduct of those [legislative] functions *unless they violate a constitutional or statutory provision*") (emphasis added).

the common-law claim and allowed the judgment for Hill on that claim to stand.

On its facts, the disposition of the *Hill* case would appear to be unexceptional. The defendant in *Hill* was a state agency protected from suit in a federal court by the Eleventh Amendment. See *Quern* v. *Jordan*, 440 U. S. 332, 341 (1979) (§ 1983 does not "override the traditional sovereign immunity of the States").[12] As we held last Term in *Will* v. *Michigan Dept. of State Police*, 491 U. S. 58 (1989), an entity with Eleventh Amendment immunity is not a "person" within the meaning of § 1983. The anomaly identified by the State Supreme Court, and by the various state courts which it cited,[13] that a State might be forced to entertain in its own courts suits from which it was immune in federal court, is thus fully met by our decision in *Will*. *Will* establishes that the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court.

The language and reasoning of the State Supreme Court, if not its precise holding, however, went further. That further step was completed by the District Court of Appeal in this case. As that court construed the law, Florida has extended

---

[12] Prior to the Florida Supreme Court's decision in *Hill*, the United States Court of Appeals for the Eleventh Circuit had concluded that a state agency was protected from suit in federal court under § 1983 and that the waiver-of-immunity statute did not constitute a consent to suit in federal court. See *Gamble* v. *Florida Dept. of Health and Rehabilitative Servs.*, 779 F. 2d 1509 (1986).

[13] See *De Bleecker* v. *Montgomery County*, 292 Md. 498, 513, n. 4, 438 A. 2d 1348, 1356, n. 4 (1982); *Kapil* v. *Association of Pennsylvania State College and University Faculties*, 68 Pa. Commw. 287, 448 A. 2d 717 (1982), rev'd on other grounds, 504 Pa. 92, 470 A. 2d 482 (1983); *Karchefske* v. *Department of Mental Health*, 143 Mich. App. 1, 9–10, 371 N. W. 2d 876, 881–882 (1985); *Kristensen* v. *Strinden*, 343 N. W. 2d 67 (N. D. 1983); *Ramah Navajo School Board, Inc.* v. *Board of Revenue*, 104 N. M. 302, 720 P. 2d 1243 (App.), cert. denied, 479 U. S. 940 (1986); *Woodbridge* v. *Worcester State Hospital*, 384 Mass. 38, 44–45, n. 7, 423 N. E. 2d 782, 786, n. 7 (1981).

absolute immunity from suit not only to the State and its arms but also to municipalities, counties, and school districts that might otherwise be subject to suit under § 1983 in federal court. That holding raises the concern that the state court may be evading federal law and discriminating against federal causes of action. The adequacy of the state-law ground to support a judgment precluding litigation of the federal claim is itself a federal question which we review *de novo*. See *Johnson* v. *Mississippi*, 486 U. S. 578, 587 (1988); *James* v. *Kentucky*, 466 U. S. 341, 348–349 (1984); *Hathorn* v. *Lovorn*, 457 U. S. 255, 263 (1982); *Barr* v. *City of Columbia*, 378 U. S. 146, 149 (1964); *NAACP* v. *Alabama ex rel. Patterson*, 357 U. S. 449, 455 (1958); *Rogers* v. *Alabama*, 192 U. S. 226, 230–231 (1904); Hill, The Inadequate State Ground, 65 Colum. L. Rev. 943, 954–957 (1965). Whether the constitutional rights asserted by petitioner were "'given due recognition by the [Court of Appeal] is a question as to which the [petitioner is] entitled to invoke our judgment, and this [he has] done in the appropriate way. It therefore is within our province to inquire not only whether the right was denied in express terms, but also whether it was denied in substance and effect, as by putting forward nonfederal grounds of decision that were without any fair or substantial support.'" *Staub* v. *City of Baxley*, 355 U. S. 313, 318–319 (1958) (quoting *Ward* v. *Love County Board of Comm'rs*, 253 U. S. 17, 22 (1920)).[14]

---

[14] We reject the suggestion of respondent's *amici*, see Brief for Washington Legal Foundation et al. as *Amici Curiae* 7, that we remand the case to the state court for further explanation. While we have followed that course when there was reason to believe that the state-court decision rested on unstated premises of state law, see *Employment Division, Dept. of Human Resources of Ore.* v. *Smith*, 485 U. S. 660, 673–674 (1988), we have long held that this Court has an independent obligation to ascertain whether a judgment defeating the enforcement of federal rights rests upon a valid nonfederal ground and whether that ground finds "fair or substantial support" in state law. See, *e. g.*, *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S. 229, 234 (1969); *NAACP* v. *Alabama ex rel. Patterson*, 357

## III

Federal law is enforceable in state courts not because Congress has determined that federal courts would otherwise be burdened or that state courts might provide a more convenient forum—although both might well be true—but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws "the supreme Law of the Land," and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure. "The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. . . . The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent." *Claflin* v. *Houseman*, 93 U. S. 130, 136–137 (1876); see *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S. 211, 222 (1916) ("[T]he governments and courts of both the Nation and the several States [are not] strange or foreign to each other in the broad sense of that word, but [are] all courts of a common country, all within the orbit of their lawful authority being charged with the duty to safeguard and enforce the right of every citizen without reference to the

---

U. S. 449, 454 (1958); *Broad River Power Co.* v. *South Carolina ex rel. Daniel*, 281 U. S. 537, 540 (1930). The reasons for that rule rest on nothing less than this Court's ultimate authority to review state-court decisions in which "any title, right, privilege, or immunity is specially set up or claimed under the Constitution." 28 U. S. C. § 1257(a); see *Martin* v. *Hunter's Lessee*, 1 Wheat. 304 (1816). "To hold otherwise would open an easy method of avoiding the jurisdiction of this court." *Terre Haute & Indianapolis R. Co.* v. *Indiana ex rel. Ketcham*, 194 U. S. 579, 589 (1904) (Holmes, J.).

particular exercise of governmental power from which the right may have arisen, if only the authority to enforce such right comes generally within the scope of the jurisdiction conferred by the government creating them"); Hart, The Relations Between State and Federal Law, 54 Colum. L. Rev. 489 (1954) ("The law which governs daily living in the United States is a single system of law"); see also *Tafflin* v. *Levitt*, 493 U. S. 455, 469 (1990) (SCALIA, J., concurring).[15]  As Alexander Hamilton expressed the principle in a classic passage:

> "[I]n every case in which they were not expressly excluded by the future acts of the national legislature, [state courts] *will of course take cognizance of the causes to which those acts may give birth.*  This I infer from the nature of judiciary power, and from the general genius of the system.  The judiciary power of every government looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation *between parties within its jurisdiction*, though the causes of dispute are relative to the laws of the most distant part of the globe.

---

[15] See also *Worcester* v. *Georgia*, 6 Pet. 515, 571 (1832) (McLean, J.):

"It has been asserted that the federal government is foreign to the state governments; and that it must consequently be hostile to them.  Such an opinion could not have resulted from a thorough investigation of the great principles which lie at the foundation of our system.  The federal government is neither foreign to the state governments, nor is it hostile to them. It proceeds from the same people, and is as much under their control as the state governments.

"Where, by the Constitution, the power of legislation is exclusively vested in Congress, they legislate for the people of the Union, and their acts are as binding as are the constitutional enactments of a state legislature on the people of the state."

Congress, of course, may oust the state courts of their concurrent jurisdiction.  See *Yellow Freight System, Inc.* v. *Donnelly*, 494 U. S. 820 (1990); *Tafflin* v. *Levitt*, 493 U. S. 455 (1990); *Houston* v. *Moore*, 5 Wheat. 1, 25–26 (1820).

Those of Japan, not less than of New York, may furnish the objects of legal discussion to our courts. When in addition to this we consider the State governments and the national governments, as they truly are, in the light of kindred systems, and as parts of ONE WHOLE, the inference seems to be conclusive, that the State courts would have a concurrent jurisdiction in all cases arising under the laws of the Union, where it was not expressly prohibited." The Federalist No. 82, p. 132 (E. Bourne ed. 1947) (emphasis added).

Three corollaries follow from the proposition that "federal" law is part of the "Law of the Land" in the State:

1. A state court may not deny a federal right, when the parties and controversy are properly before it, in the absence of "valid excuse." *Douglas* v. *New York, N. H. & H. R. Co.*, 279 U. S. 377, 387–388 (1929) (Holmes, J.).[16] "The ex-

---

[16] See *Hathorn* v. *Lovorn*, 457 U. S. 255, 263 (1982); *Barr* v. *City of Columbia*, 378 U. S. 146, 149 (1964); *NAACP* v. *Alabama ex rel Patterson*, 357 U. S., at 455; *Rogers* v. *Alabama*, 192 U. S. 226, 230–231 (1904); *Eustis* v. *Bolles*, 150 U. S. 361 (1893); Hill, The Inadequate State Ground, 65 Colum. L. Rev. 943, 954–957 (1965).

To understand why this is so, one need only imagine a contrary system in which the Supremacy Clause operated as a constraint on the activity of state-court judges like that imposed on other state actors, rather than as a rule of decision. On that hypothesis, state courts would be subject to the ultimate superintendence of federal courts which would vacate judgments entered in violation of federal law, just as they might overturn unconstitutional state legislative or executive decisions. Federal courts would exercise a superior authority to enforce and apply the Constitution and laws passed pursuant to it. See Wechsler, The Appellate Jurisdiction of the Supreme Court: Reflections on the Law and the Logistics of Direct Review, 34 Wash. & Lee L. Rev. 1043, 1047 (1977) (describing, and rejecting, alternative view of Supremacy Clause, as intrusion on state autonomy).

The language of the Supremacy Clause—which directs that "the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding"—and our cases confirm that state courts have the coordinate authority and consequent

istence of the jurisdiction creates an implication of duty to exercise it." *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, 58 (1912); see *Testa* v. *Katt*, 330 U. S. 386 (1947); *Missouri ex rel. St. Louis, B. & M. R. Co.* v. *Taylor*, 266 U. S. 200, 208 (1924); *Robb* v. *Connolly*, 111 U. S. 624, 637 (1884).[17]

---

responsibility to enforce the supreme law of the land. Early in our history, in support of the Court's power of review over state courts, Justice Story anticipated that such courts "in the exercise of their ordinary jurisdiction . . . would incidentally take cognizance of cases arising under the constitution, the laws, and treaties of the United States," *Martin* v. *Hunter's Lessee*, 1 Wheat., at 342, and would decide federal questions even when, pleaded in replication, they were necessary to the plaintiff's case. *Id.*, at 340. The adequate-state-ground doctrine accords respect to state courts as decisionmakers by honoring their modes of procedure. The structure of our system of judicial review, the requirement that a federal question arising from a state case must first be presented to the state courts for decision, see, *e. g.,* *Cardinale* v. *Louisiana*, 394 U. S. 437 (1969); *State Farm Mutual Automobile Ins. Co.* v. *Duel*, 324 U. S. 154, 160–161 (1945); *McGoldrick* v. *Compagnie Generale Transatlantique*, 309 U. S. 430, 434 (1940), and the rule that a federal district court cannot entertain an original action alleging that a state court violated the Constitution by giving effect to an unconstitutional state statute, see *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413, 415–416 (1923) ("If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. . . . Unless and until so reversed or modified, it would be an effective and conclusive adjudication"); see also *District of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462, 476, 483–484, n. 16 (1983), all also presuppose that state courts presumptively have the obligation to apply federal law to a dispute before them and may not deny a federal right in the absence of a valid excuse.

[17] *Amici* argue that the obligation of state courts to enforce federal law rests, not on the Supremacy Clause, but on a presumption about congressional intent and that Congress should be explicit when it intends to make federal claims enforceable in state court. Brief for Washington Legal Foundation et al. as *Amici Curiae* 8–9, 13. The argument is strikingly similar to the argument that we addressed in *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S. 211 (1916), when we held that state courts need not comply with the Seventh Amendment in hearing a federal statutory claim. We rejected the argument that "state courts [had] become courts

2. An excuse that is inconsistent with or violates federal law is not a valid excuse: The Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source. "The suggestion that the act of Congress is not in harmony with the policy of the State, and therefore that the courts of the State are free to decline jurisdiction, is quite inadmissible because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the States, and thereby established a policy for all. That policy is as much the policy of [the State] as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State." *Mondou*, 223 U. S., at 57; see *Miles* v. *Illinois Central R. Co.*, 315 U. S. 698, 703–704

of the United States exercising a jurisdiction conferred by Congress, whenever the duty was cast upon them to enforce a Federal right." *Id.*, at 222. We reject it again today. We stated in *Bombolis:*

"It is true in the *Mondou Case* it was held that where the general jurisdiction conferred by the state law upon a state court embraced otherwise causes of action created by an act of Congress, it would be a violation of duty under the Constitution for the court to refuse to enforce the right arising from the law of the United States because of conceptions of impolicy or want of wisdom on the part of Congress in having called into play its lawful powers. But that ruling in no sense implied that the duty which was declared to exist on the part of the state court depended upon the conception that for the purpose of enforcing the right the state court was to be treated as a Federal court deriving its authority not from the State creating it, but from the United States. On the contrary the principle upon which the *Mondou Case* rested, while not questioning the diverse governmental sources from which state and national courts drew their authority, recognized the unity of the governments, national and state, and the common fealty of all courts, both state and national, to both state and national constitutions, and the duty resting upon them, when it was within the scope of their authority, to protect and enforce rights lawfully created, without reference to the particular government from whose exercise of lawful power the right arose." *Id.*, at 222–223.

See also *Tafflin* v. *Levitt*, 493 U. S., at 469–470 (SCALIA, J., concurring).

(1942) ("By virtue of the Constitution, the courts of the several states must remain open to such litigants on the same basis that they are open to litigants with causes of action springing from a different source"); *McKnett* v. *St. Louis & San Francisco R. Co.*, 292 U. S. 230, 233–234 (1934); *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S. 211 (1916); cf. *FERC* v. *Mississippi*, 456 U. S. 742, 776, n. 1 (1982) (opinion of O'CONNOR, J.) (State may not discriminate against federal causes of action).

3. When a state court refuses jurisdiction because of a neutral state rule regarding the administration of the courts, we must act with utmost caution before deciding that it is obligated to entertain the claim. See *Missouri ex rel. Southern R. Co.* v. *Mayfield*, 340 U. S. 1 (1950); *Georgia Rail Road & Banking Co.* v. *Musgrove*, 335 U. S. 900 (1949) *(per curiam); Herb* v. *Pitcairn*, 324 U. S. 117 (1945); *Douglas* v. *New York, N. H. & H. R. Co.*, 279 U. S. 377 (1929). The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the State create a court competent to hear the case in which the federal claim is presented. The general rule, "bottomed deeply in belief in the importance of state control of state judicial procedure, is that federal law takes the state courts as it finds them." Hart, 54 Colum. L. Rev., at 508; see also *Southland Corp.* v. *Keating*, 465 U. S. 1, 33 (1984) (O'CONNOR, J., dissenting); *FERC* v. *Mississippi*, 456 U. S., at 774 (opinion of Powell, J.). The States thus have great latitude to establish the structure and jurisdiction of their own courts. See *Herb, supra; Bombolis, supra; Missouri* v. *Lewis*, 101 U. S. 22, 30–31 (1880). In addition, States may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law. See *Felder* v. *Casey*, 487 U. S. 131 (1988); *James* v. *Kentucky*, 466 U. S., at 348.

These principles are fundamental to a system of federalism in which the state courts share responsibility for the applica-

tion and enforcement of federal law. In *Mondou*, for example, we held that rights under the Federal Employers' Liability Act (FELA) "may be enforced, as of right, in the courts of the States when their jurisdiction, as prescribed by local laws, is adequate to the occasion." 223 U. S., at 59. The Connecticut courts had declined cognizance of FELA actions because the policy of the federal Act was "not in accord with the policy of the State," and it was "inconvenient and confusing" to apply federal law. *Id.*, at 55–56. We noted, as a matter of some significance, that Congress had not attempted "to enlarge or regulate the jurisdiction of state courts or to control or affect their modes of procedure," *id.*, at 56, and found from the fact that the state court was a court of general jurisdiction with cognizance over wrongful-death actions that the court's jurisdiction was "appropriate to the occasion," *id.*, at 57. "The existence of the jurisdiction creat[ed] an implication of duty to exercise it," *id.*, at 58, which could not be overcome by disagreement with the policy of the federal Act, *id.*, at 57.

In *McKnett*, the state court refused to exercise jurisdiction over a FELA cause of action against a foreign corporation for an injury suffered in another State. We held "[w]hile Congress has not attempted to compel states to provide courts for the enforcement of the Federal Employers' Liability Act, the Federal Constitution prohibits state courts of general jurisdiction from refusing to do so solely because the suit is brought under a federal law." 292 U. S., at 233–234 (citation omitted). Because the state court had "general jurisdiction of the class of actions to which that here brought belongs, in cases between litigants situated like those in the case at bar," *id.*, at 232, the refusal to hear the FELA action constituted discrimination against rights arising under federal laws, *id.*, at 234, in violation of the Supremacy Clause.

We unanimously reaffirmed these principles in *Testa* v. *Katt*. We held that the Rhode Island courts could not decline jurisdiction over treble damages claims under the fed-

eral Emergency Price Control Act when their jurisdiction was otherwise "adequate and appropriate under established local law." 330 U. S., at 394. The Rhode Island court had distinguished our decisions in *McKnett* and *Mondou* on the grounds that the federal Act was a "penal statute," which would not have been enforceable under the Full Faith and Credit Clause if passed by another State. We rejected that argument. We observed that the Rhode Island court enforced the "same type of claim" arising under state law and claims for double damages under federal law. 330 U. S., at 394. We therefore concluded that the court had "jurisdiction adequate and appropriate under established local law to adjudicate this action." *Ibid.*[18] The court could not decline to exercise this jurisdiction to enforce federal law by labeling it "penal." The policy of the federal Act was to be considered "the prevailing policy in every state" which the state court could not refuse to enforce "'because of conceptions of impolicy or want of wisdom on the part of Congress in having called into play its lawful powers.'" *Id.*, at 393 (quoting *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S., at 222).

On only three occasions have we found a valid excuse for a state court's refusal to entertain a federal cause of action. Each of them involved a neutral rule of judicial administration. In *Douglas* v. *New York, N. H. & H. R. Co.*, 279 U. S. 377 (1929), the state statute permitted discretionary dismissal of both federal and state claims where neither the plaintiff nor the defendant was a resident of the forum State.[19] In *Herb*, the City Court denied jurisdiction over a

---

[18] We cited for this proposition the section of the Rhode Island code authorizing the State District Court and Superior Court to entertain actions for fines, penalties, and forfeitures. See 330 U. S., at 394, n. 13 (citing R. I. Gen. Laws, ch. 631, § 4 (1938)).

[19] We wrote: "It may very well be that if the Supreme Court of New York were given no discretion, being otherwise competent, it would be subject to a duty. But there is nothing in the Act of Congress that purports to force a duty upon such Courts as against an otherwise valid excuse. *Sec-*

FELA action on the grounds that the cause of action arose outside its territorial jurisdiction. Although the state court was not free to dismiss the federal claim "because it is a federal one," we found no evidence that the state courts "construed the state jurisdiction and venue laws in a discriminatory fashion." 324 U. S., at 123. Finally, in *Mayfield*, we held that a state court could apply the doctrine of *forum non conveniens* to bar adjudication of a FELA case if the State "enforces its policy impartially so as not to involve a discrimination against Employers' Liability Act suits." 340 U. S., at 4 (citation omitted).

## IV

The parties disagree as to the proper characterization of the District Court of Appeal's decision. Petitioner argues that the court adopted a substantive rule of decision that state agencies are not subject to liability under § 1983. Respondents, stressing the court's language that it had not "opened its own courts for federal actions against the state," 537 So. 2d, at 708, argue that the case simply involves the court's refusal to take cognizance of § 1983 actions against state defendants. We conclude that whether the question is framed in pre-emption terms, as petitioner would have it, or in the obligation to assume jurisdiction over a "federal" cause of action, as respondents would have it, the Florida court's refusal to entertain one discrete category of § 1983 claims, when the court entertains similar state-law actions against state defendants, violates the Supremacy Clause.

If the District Court of Appeal meant to hold that governmental entities subject to § 1983 liability enjoy an immunity over and above those already provided in § 1983, that holding directly violates federal law. The elements of, and the defenses to, a federal cause of action are defined by federal law. See, *e. g.*, *Monessen Southwestern R. Co.* v. *Morgan*, 486

---

*ond Employers' Liability Cases*, 223 U. S. 1, 56, 57." 279 U. S., at 387–388.

U. S. 330, 335 (1988); *Chesapeake & Ohio R. Co.* v. *Kuhn*, 284 U. S. 44, 46–47 (1931). A State may not, by statute or common law, create a cause of action under § 1983 against an entity whom Congress has not subjected to liability. *Moor* v. *County of Alameda*, 411 U. S. 693, 698–710 (1973). Since this Court has construed the word "person" in § 1983 to exclude States, neither a federal court nor a state court may entertain a § 1983 action against such a defendant. Conversely, since the Court has held that municipal corporations and similar governmental entities are "persons," see *Monell* v. *New York City Dept. of Social Services*, 436 U. S. 658, 663 (1978); cf. *Will*, 491 U. S., at 69, n. 9; *Mt. Healthy City Bd. of Education* v. *Doyle*, 429 U. S. 274, 280–281 (1977), a state court entertaining a § 1983 action must adhere to that interpretation. "Municipal defenses—including an assertion of sovereign immunity—to a federal right of action are, of course, controlled by federal law." *Owen* v. *City of Independence*, 445 U. S., at 647, n. 30. "By including municipalities within the class of 'persons' subject to liability for violations of the Federal Constitution and laws, Congress— the supreme sovereign on matters of federal law—abolished whatever vestige of the State's sovereign immunity the municipality possessed." *Id.*, at 647–648 (footnote omitted).

In *Martinez* v. *California*, 444 U. S. 277 (1980), we unanimously concluded that a California statute that purported to immunize public entities and public employees from any liability for parole release decisions was pre-empted by § 1983 "even though the federal cause of action [was] being asserted in the state courts." *Id.*, at 284. We explained:

> "'Conduct by persons acting under color of state law which is wrongful under 42 U. S. C. § 1983 or § 1985(3) cannot be immunized by state law. A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper con-

struction may be enforced. See *McLaughlin* v. *Tilendis*, 398 F. 2d 287, 290 (7th Cir. 1968). The immunity claim raises a question of federal law.' *Hampton* v. *Chicago*, 484 F. 2d 602, 607 (CA7 1973), cert. denied, 415 U. S. 917." *Id.*, at 284, n. 8.

In *Felder* v. *Casey*, we followed *Martinez* and held that a Wisconsin notice-of-claim statute that effectively shortened the statute of limitations and imposed an exhaustion requirement on claims against public agencies and employees was pre-empted insofar as it was applied to § 1983 actions. After observing that the lower federal courts, with one exception, had determined that notice-of-claim statutes were inapplicable to § 1983 actions brought in federal courts, we stated that such a consensus also demonstrated that "enforcement of the notice-of-claim statute in § 1983 actions brought in state court . . . interfer[ed] with and frustrat[ed] the substantive right Congress created." 487 U. S., at 151. We concluded: "The decision to subject state subdivisions to liability for violations of federal rights . . . was a choice that Congress, not the Wisconsin Legislature, made, and it is a decision that the State has no authority to override." *Id.*, at 143.

While the Florida Supreme Court's actual decision in *Hill* is consistent with the foregoing reasoning, the Court of Appeal's extension of *Hill* to persons subject by § 1983 to liability is flatly inconsistent with that reasoning and the holdings in both *Martinez* and *Felder*. Federal law makes governmental defendants that are not arms of the State, such as municipalities, liable for their constitutional violations. See *St. Louis* v. *Praprotnik*, 485 U. S. 112, 121–122 (1988); *Monell* v. *New York City Dept. of Social Services*, 436 U. S. 658 (1978). Florida law, as interpreted by the District Court of Appeal, would make all such defendants absolutely immune from liability under the federal statute. To the extent that the Florida law of sovereign immunity reflects a substantive disagreement with the extent to which governmental entities should be held liable for their constitutional

violations, that disagreement cannot override the dictates of federal law. "Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action." *Wilson* v. *Garcia*, 471 U. S. 261, 269 (1985).

If, on the other hand, the District Court of Appeal meant that § 1983 claims are excluded from the category of tort claims that the Circuit Court could hear against a school board, its holding was no less violative of federal law. Cf. *Atlantic Coast Line R. Co.* v. *Burnette*, 239 U. S. 199, 201 (1915). This case does not present the questions whether Congress can require the States to create a forum with the capacity to enforce federal statutory rights or to authorize service of process on parties who would not otherwise be subject to the court's jurisdiction.[20] The State of Florida has constituted the Circuit Court for Pinellas County as a court of general jurisdiction.[21] It exercises jurisdiction over tort claims by private citizens against state entities (including school boards), of the size and type of petitioner's claim here, and it can enter judgment against them. That court also exercises jurisdiction over § 1983 actions against individual officers[22] and is fully competent to provide the remedies the fed-

---

[20] Virtually every State has expressly or by implication opened its courts to § 1983 actions, and there are no state court systems that refuse to hear § 1983 cases. See S. Steinglass, Section 1983 Litigation in State Courts 1–3, and App. E (1989) (listing cases). We have no occasion to address in this case the contentions of respondents' *amici*, see Brief for National Association of Counties et al. as *Amici Curiae* 16–25; Brief for Washington Legal Foundation et al. as *Amici Curiae* 9–15, that the States need not establish courts competent to entertain § 1983 claims. See *Maine* v. *Thiboutot*, 448 U. S. 1, 3, n. 1 (1980); *Martinez* v. *California*, 444 U. S. 277, 283, n. 7 (1980).

[21] See Fla. Stat. § 26.012(2)(a) (1989).

[22] See, *e. g.*, *Lloyd* v. *Ellis*, 520 So. 2d 59, 60 (App. 1st Dist. 1988); *Skoblow* v. *Ameri-Manage, Inc.*, 483 So. 2d 809, 812 (App. 3d Dist. 1986), aff'd on other grounds, *Spooner* v. *Department of Corrections*, 514 So. 2d 1077 (1987); *Chapman* v. *State Dept. of Health and Rehabilitative Servs.*,

eral statute requires. Cf. *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S. 229, 238 (1969). Petitioner has complied with all the state-law procedures for invoking the jurisdiction of that court.

The mere facts, as argued by respondents' *amici*, that state common law and statutory law do not make unlawful the precise conduct that § 1983 addresses and that § 1983 actions "are more likely to be frivolous than are other suits," Brief for Washington Legal Foundation et al. as *Amici Curiae* 17, clearly cannot provide sufficient justification for the State's refusal to entertain such actions. These reasons have never been asserted by the State and are not asserted by the school board. More importantly, they are not the kind of neutral policy that could be a "valid excuse" for the state court's refusal to entertain federal actions. To the extent that the Florida rule is based upon the judgment that parties who are otherwise subject to the jurisdiction of the court should not be held liable for activity that would not subject them to liability under state law, we understand that to be only another way of saying that the court disagrees with the content of federal law. Sovereign immunity in Florida turns on the nature of the claim—whether the duty allegedly breached is discretionary—not on the subject matter of the dispute. There is no question that the Circuit Court, which entertains state common-law and statutory claims against state entities in a variety of their capacities, ranging from law enforcement to schooling to the protection of individuals using parking lots,[23] has jurisdiction over the subject of this suit. That court cannot reject petitioner's § 1983 claim

---

517 So. 2d 104, 105–106 (App. 3d Dist. 1987); *Arney* v. *Department of Natural Resources*, 448 So. 2d 1041, 1045 (App. 1st Dist. 1983); *Penthouse, Inc.* v. *Saba*, 399 So. 2d 456, 458–459 (App. 2d Dist. 1981). The Florida courts have also considered on the merits applications for attorney's fees under 42 U. S. C. § 1988, even against county school boards. See, *e. g.*, *Hoffmeister* v. *Coler*, 544 So. 2d 1067 (App. 4th Dist. 1989); *Franklin County School Board* v. *Page*, 540 So. 2d 891 (App. 1st Dist. 1989).

[23] See nn. 7–11, *supra*.

because it has chosen, for substantive policy reasons, not to adjudicate other claims which might also render the school board liable. The federal law is law in the State as much as laws passed by the state legislature. A "state court cannot 'refuse to enforce the right arising from the law of the United States because of conceptions of impolicy or want of wisdom on the part of Congress in having called into play its lawful powers.'" *Testa*, 330 U. S., at 393 (quoting *Minneapolis & St. Louis R. Co.* v. *Bombolis*, 241 U. S., at 222).

The argument by *amici* that suits predicated on federal law are more likely to be frivolous and have less of an entitlement to the State's limited judicial resources warrants little response. A State may adopt neutral procedural rules to discourage frivolous litigation of all kinds, as long as those rules are not pre-empted by a valid federal law. A State may not, however, relieve congestion in its courts by declaring a whole category of federal claims to be frivolous. Until it has been proved that the claim has no merit, that judgment is not up to the States to make.

Respondents have offered no neutral or valid excuse for the Circuit Court's refusal to hear § 1983 actions against state entities. The Circuit Court would have had jurisdiction if the defendant were an individual officer and the action were based on § 1983. It would also have had jurisdiction over the defendant school board if the action were based on established state common law or statutory law. A state policy that permits actions against state agencies for the failure of their officials to adequately police a parking lot and for the negligence of such officers in arresting a person on a roadside, but yet declines jurisdiction over federal actions for constitutional violations by the same persons can be based only on the rationale that such persons should not be held liable for § 1983 violations in the courts of the State. That reason, whether presented in terms of direct disagreement with substantive federal law or simple refusal to take cognizance of

the federal cause of action, flatly violates the Supremacy Clause.

V

Respondents offer two final arguments in support of the judgment of the District Court of Appeal.[24]   First, at oral argument — but not in their brief — they argued that a federal court has no power to compel a state court to entertain a claim over which the state court has no jurisdiction as a matter of state law.   Second, respondents argue that sovereign immunity is not a creature of state law, but of long-established legal principles which have not been set aside by § 1983.   We find no merit in these contentions.

The fact that a rule is denominated jurisdictional does not provide a court an excuse to avoid the obligation to enforce federal law if the rule does not reflect the concerns of power over the person and competence over the subject matter that jurisdictional rules are designed to protect.   It is settled that a court of otherwise competent jurisdiction may not avoid its parallel obligation under the Full Faith and Credit Clause to entertain another State's cause of action by invocation of the term "jurisdiction."   See *First Nat. Bank of Chicago* v. *United Air Lines, Inc.*, 342 U. S. 396 (1952); *Hughes* v. *Fetter*, 341 U. S. 609, 611 (1951); *Broderick* v. *Rosner*, 294 U. S. 629, 642–643 (1935); *Kenney* v. *Supreme Lodge, Loyal Order of Moose*, 252 U. S. 411 (1920).   A State cannot "escape this constitutional obligation to enforce the rights and duties validly created under the laws of other states by the simple device of removing jurisdiction from courts otherwise compe-

---

[24] Respondents also argue in their brief on the merits that a Florida school board is an arm of the State and thus is not a person under § 1983. This contention was not presented in respondents' brief in opposition to the petition for certiorari, and we decline to reach it here.   See *California Board of Equalization* v. *Sierra Summit, Inc.*, 490 U. S. 844, 846, n. 3 (1989); *Canton* v. *Harris*, 489 U. S. 378, 384–385 (1989); *Oklahoma City* v. *Tuttle*, 471 U. S. 808, 815–816 (1985).

tent." *Hughes*, 341 U. S., at 611.[25] Similarly, a State may not evade the strictures of the Privileges and Immunities Clause by denying jurisdiction to a court otherwise competent. See *Angel* v. *Bullington*, 330 U. S. 183, 188–189 (1947); *Douglas* v. *New York, N. H. & H. R. Co.*, 279 U. S. 377 (1929); cf. *White* v. *Hart*, 13 Wall. 646, 653–654 (1872) (Contract Clause). As our discussion of *Testa*, *McKnett*, and *Mondou* establishes, the same is true with respect to a state court's obligations under the Supremacy Clause.[26] The force

---

[25] See Currie, The Constitution and the "Transitory" Cause of Action, 73 Harv. L. Rev. 268, 302 (1959) ("The supremacy clause . . . forecloses state social and economic policies just as the full faith and credit clause forecloses them when the subject is solely within the control of a sister state"); Hill, Substance and Procedure in State FELA Actions—The Converse of the Erie Problem?, 17 Ohio St. L. J. 384, 410–411, n. 159 (1956) ("Just as the states are obliged to give effect to legal rights created by other states, so they are obliged, even without a Congressional directive, to give effect to legal rights created by federal law" (citations omitted)); Brilmayer & Underhill, Congressional Obligation to Provide a Forum for Constitutional Claims: Discriminatory Jurisdictional Rules and the Conflict of Laws, 69 Va. L. Rev. 819, 819–829 (1983).

[26] As Justice Brandeis stated in *McKnett* v. *St. Louis & San Francisco R. Co.*, 292 U. S. 230 (1934):

"The power of a State to determine the limits of the jurisdiction of its courts and the character of the controversies which shall be heard in them is, of course, subject to the restrictions imposed by the Federal Constitution. The privileges and immunities clause requires a state to accord to citizens of other states substantially the same right of access to its courts as it accords to its own citizens. *Corfield* v. *Coryell*, 4 Wash. C. C. 371, 381. Compare *Canadian Northern Ry. Co.* v. *Eggen*, 252 U. S. 553. The full faith and credit clause requires a state court to take jurisdiction of an action to enforce a judgment recovered in another state, although it might have refused to entertain a suit on the original cause of action as obnoxious to its public policy. *Fauntleroy* v. *Lum*, 210 U. S. 230; *Kenney* v. *Supreme Lodge*, 252 U. S. 411, 415; *Loughran* v. *Loughran*, decided this day, *ante*, p. 216. By *Mondou* v. *New York, N. H. & H. R. Co.*, 223 U. S. 1, an action in a Connecticut court against a domestic corporation, it was settled that a state court whose ordinary jurisdiction as prescribed by local laws is appropriate for the occasion, may not refuse to entertain suits under the Federal Employers' Liability Act." *Id.*, at 233.

of the Supremacy Clause is not so weak that it can be evaded by mere mention of the word "jurisdiction." Indeed, if this argument had merit, the State of Wisconsin could overrule our decision in *Felder* v. *Casey*, 487 U. S. 131 (1988), by simply amending its notice-of-claim statute to provide that no state court would have jurisdiction of an action in which the plaintiff failed to give the required notice. The Supremacy Clause requires more than that.

Respondents' argument that Congress did not intend to abrogate an immunity with an ancient common-law heritage is the same argument, in slightly different dress, as the argument that we have already rejected that the States are free to redefine the federal cause of action. Congress did take common-law principles into account in providing certain forms of absolute and qualified immunity, see *Wood* v. *Strickland*, 420 U. S. 308 (1975); *Scheuer* v. *Rhodes*, 416 U. S. 232 (1974); *Pierson* v. *Ray*, 386 U. S. 547 (1967), and in excluding States and arms of the State from the definition of person, see *Will* v. *Michigan Dept. of State Police*, 491 U. S. 58 (1989); *Ngiraingas* v. *Sanchez*, 495 U. S. 182 (1990); see also *Quern* v. *Jordan*, 440 U. S. 332 (1979). But as to persons that Congress subjected to liability, individual States may not exempt such persons from federal liability by relying on their own common-law heritage. If we were to uphold the immunity claim in this case, every State would have the same opportunity to extend the mantle of sovereign immunity to "persons" who would otherwise be subject to § 1983 liability. States would then be free to nullify for their own people the legislative decisions that Congress has made on behalf of all the People.

The judgment of the Court of Appeal is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*