[881 NE2d 180, 851 NYS2d 84]

KEITH HAYWOOD, Appellant, v CURTIS DROWN, Respondent. (Action No. 1.)

KEITH HAYWOOD, Appellant, v PAT SMITH et al., Respondents. (Action No. 2.)

Argued October 17, 2007; decided November 27, 2007

**POINTS OF COUNSEL**

*Dechert LLP* (*Jason E. Murtagh,* of the Pennsylvania bar, admitted pro hac vice, of counsel) and *Dechert LLP,* New York City (*Gary J. Mennitt* of counsel), for appellant. I. Correction Law § 24's alleged bar of 42 USC § 1983 claims in state courts would violate the Supremacy Clause. (*Woodward v State of New York,* 23 AD3d 852; *Howlett v Rose,* 496 US 356; *Will v Michigan Dept. of State Police,* 491 US 58; *Brown v State of New York,* 89 NY2d 172; *Gittens v State of New York,* 132 Misc 2d 399; *Felder v Casey,* 487 US 131; *Martinez v California,* 444 US 277; *Wyatt v Cole,* 504 US 158; *Carey v Piphus,* 435 US 247; *Smith v Wade,* 461 US 30.) II. The courts below misinterpreted Correction Law § 24, an indemnification statute not designed to eliminate 42 USC § 1983 damages claims from state court.

*Andrew M. Cuomo, Attorney General,* Albany (*Robert M. Goldfarb, Barbara D. Underwood* and *Nancy A. Spiegel* of counsel), for respondents. I. Correction Law § 24, by circumscribing the jurisdiction of the state courts over claims for damages against the New York State Department of Correctional Services personnel, does not violate the Supremacy Clause. (*Arteaga v State of New York,* 72 NY2d 212; *Cepeda v Coughlin,* 128 AD2d 995, 70 NY2d 602; *Matter of McGee v Korman,* 70 NY2d 225; *LaValle v Hayden,* 98 NY2d 155; *People v Tichenor,* 89 NY2d 769, 522 US 918; *Will v Michigan Dept. of State Police,* 491 US 58; *Maine v Thiboutot,* 448 US 1; *National Private Truck Council, Inc. v Oklahoma Tax Comm'n,* 515 US 582; *Howlett v Rose,* 496 US 356; *Brown v Gerdes,* 321 US 178.) II. Correction Law § 24 is not an indemnification statute. (*Matter of Barbara C.,* 64 NY2d

866; *Majewski v Broadalbin-Perth Cent. School Dist.,* 91 NY2d 577.)

*Susan Johnson,* Ithaca, *Karen Murtagh-Monks, Patricia Warth, Betsy Hutchings, Steven Banks,* New York City, *John Boston* and *Alfred O'Connor,* Albany, for Prisoners' Legal Services of New York and others, amici curiae. I. Correction Law § 24, as interpreted by the court below, violates the Supremacy Clause because it is preempted by federal law. (*Monell v New York City Dept. of Social Servs.,* 436 US 658; *Howlett v Rose,* 496 US 356; *Claflin v Houseman,* 93 US 130; *Maine v Thiboutot,* 448 US 1; *Martinez v California,* 444 US 277; *Woodward v State of New York,* 23 AD3d 852; *Cepeda v Coughlin,* 128 AD2d 995; *Baker v Coughlin,* 77 F3d 12; *Brown v Coughlin,* 869 F Supp 196; *Degrafinreid v Ricks,* 452 F Supp 2d 328.) II. Correction Law § 24, as interpreted by the court below, violates the Supremacy Clause because it burdens the litigation of 42 USC 1983 claims. (*Felder v Casey,* 487 US 131; *Cepeda v Coughlin,* 128 AD2d 995; *Woodward v State of New York,* 23 AD3d 852; *Brown v State of New York,* 89 NY2d 172; *Cavanaugh v Doherty,* 243 AD2d 92; *Wright v Coughlin,* 31 F Supp 2d 301, 225 F3d 647; *Riviello v Waldron,* 47 NY2d 297; *Murray v Reif,* 36 AD3d 1167; *Bouffard v Lewis,* 139 Misc 2d 786.) III. Correction Law § 24, as interpreted by the court below, violates the Supremacy Clause because it discriminates against a federal right. (*Testa v Katt,* 330 US 386; *Claflin v Houseman,* 93 US 130; *Second Employers' Liability Cases,* 223 US 1; *Douglas v New York, N. H. & H. R. Co.,* 279 US 377; *McKnett v St. Louis & San Francisco R. Co.,* 292 US 230; *Howlett v Rose,* 496 US 356; *Bradley v County of Albany,* 161 AD2d 1050; *Mann v Alvarez,* 242 AD2d 318; *Cooper Industries, Inc. v Leatherman Tool Group, Inc.,* 532 US 424.) IV. Correction Law § 24 violates the Supremacy Clause because it offends principles of federalism by ousting the state courts from a significant area of federal constitutional adjudication. (*Immuno AG. v Moor-Jankowski,* 77 NY2d 235; *Marbury v Madison,* 1 Cranch [5 US] 137.) V. If Correction Law § 24 is interpreted as the Legislature intended—to simply indemnify the New York State Department of Correctional Services employees—then the statute need not be struck as unconstitutional. (*People v Dietze,* 75 NY2d 47; *People v Barber,* 289 NY 378; *Brown v Coughlin,* 869 F Supp 196; *Matter of Burrows v Board of Assessors for Town of Chatham,* 98 AD2d 250.)

**OPINION OF THE COURT**

GRAFFEO, J.

Pursuant to Correction Law § 24, New York courts lack jurisdiction under state or federal law to entertain civil actions seeking money damages against correction officers. The issue in this case is whether section 24 violates the Supremacy Clause of the United States Constitution because state courts cannot adjudicate federal 42 USC § 1983 causes of action alleging violations of civil rights. We hold that the statute is not unconstitutional.

I

Plaintiff Keith Haywood was sentenced as a second violent felony offender to a 15-to-30-year term of imprisonment after being convicted in 1990 of escape in the first degree and eight counts of robbery in the first degree.[1] While incarcerated at the Attica Correctional Facility, plaintiff was the subject of two misbehavior reports in June 2003, one for assaulting a correction officer and the other for failing a urinalysis test. After separate administrative hearings, plaintiff was found guilty of both disciplinary charges. About a year later, another misbehavior report was issued charging plaintiff with improper mail solicitation. A hearing officer determined that plaintiff was guilty of that charge.

In the aftermath of these disciplinary findings, plaintiff commenced two unrelated, pro se civil actions in state Supreme Court premised on 42 USC § 1983 against employees of the state Department of Correctional Services (DOCS).[2] The first complaint alleged that defendant Curtis Drown, the DOCS hearing officer who found plaintiff guilty of improper mail solicitation, failed to conduct a fair and impartial hearing, that his determination was based on insufficient evidence and that the

---

**1.** *See People v Haywood*, 184 AD2d 450, 450 (1st Dept 1992), *lv denied* 80 NY2d 904 (1992).

**2.** Plaintiff has also filed other pro se complaints during his term of confinement (*see e.g. Kollar v Conagra Foods Retail Prods. Co.*, No. 07 CV 0130, 2007 WL 1371105 [WD NY 2007] [complaint regarding ingestion of allegedly tainted peanut butter]; *Haywood v Republic Tobacco, Co., L.P.*, 2007 WL 1063004, *1 [WD NY 2005, No. 05-CV-842A] [complaint alleged exposure to second-hand cigarette smoke]; *Haywood v Nabisco Inc.*, 2005 WL 3523467 [Sup Ct, NY County 2005] [complaint asserted that a "Chip's Ahoy" cookie contained a penny that cracked his tooth]; *Haywood v Koehler*, 78 F3d 101, 103 [2d Cir 1996] [complaint of use of excessive force]; *Haywood v Hudson*, 1994 WL 36388, *1, 1994 US Dist LEXIS 877, *1 [ED NY 1994, CV-90-3287] [complaint of use of excessive force]).

penalty imposed was intended to censor plaintiff in violation of the First Amendment. Asserting that his federal civil rights had been impaired, plaintiff sought expungement of the misbehavior charge, punitive damages and attorneys' fees under 42 USC § 1983.[3]

Plaintiff's second lawsuit was filed against defendant Pat Smith, a DOCS hearing officer, two correction officers and two of their superior officers. According to plaintiff, he had been grabbed from behind without justification by one of the correction officers and sustained a "minor injury to his left pinkie finger." He claimed that the correction officer involved in the incident had conspired with his superiors to fabricate the facts set forth in his June 2003 misbehavior report. Plaintiff further alleged that the urinalysis test conducted in June 2003 had been tampered with by DOCS employees. The complaint, relying on 42 USC § 1983, accused defendants of conspiring to violate plaintiff's federal civil rights by assaulting him without cause, creating a false misbehavior report, tampering with his urinalysis test and denying him a fair and impartial hearing.[4]

The defendants in both actions, represented by the Office of the Attorney General pursuant to Public Officers Law § 17, moved to dismiss the complaints on the ground that plaintiff's claims—both state and federal—were barred by Correction Law § 24. This statute provides, in pertinent part:

> "1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department [of correctional services], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> "2. Any claim for damages arising out of any act

---

**3.** This federal statute provides that

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

**4.** The complaint also asserted a second cause of action based on an alleged violation of plaintiff's state constitutional rights.

> done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state."

Supreme Court dismissed both complaints on this statutory basis, citing *Woodward v State of New York* (23 AD3d 852 [3d Dept 2005], *lv dismissed* 6 NY3d 807 [2006]). The Appellate Division affirmed, concluding that section 24 did not violate the Supremacy Clause of the United States Constitution. Plaintiff appeals as of right and we now affirm.

## II

Plaintiff contends that when Congress enacted 42 USC § 1983, it imposed a national policy that was intended to allow persons who are injured by others acting under color of law to seek judicial redress. He claims that by prohibiting section 1983 actions for money damages, Correction Law § 24 impermissibly discriminates against the federal cause of action contrary to the purpose of the Supremacy Clause.[5] Defendants submit that there is no constitutional violation because the states are free to limit the subject matter jurisdiction of their courts. They maintain that section 24 treats all state and federal monetary claims identically since none can be brought against a correction officer personally and, therefore, section 24 does not discriminate against a federal cause of action in favor of a state cause of action.

The Supremacy Clause declares that the

> "Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding" (US Const art VI [2]).

In the event of a conflict between federal and state law, the Supremacy Clause preempts operation of state law because when Congress adopts an act it speaks " 'for all the people and all the States, and thereby establishe[s] a policy for all. That policy is

---

**5.** Plaintiff's alternative claim, that the statute merely indemnifies correction officers, was not raised in Supreme Court and is therefore unpreserved.

as much the policy of [the State] as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State' " (*Howlett v Rose*, 496 US 356, 371 [1990], quoting *Mondou v New York, N.H. & H.R. Co.*, 223 US 1, 57 [1912]; *see e.g. Testa v Katt*, 330 US 386, 393 [1947]). Thus, under the Supremacy Clause, "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law" (*Felder v Casey*, 487 US 131, 138 [1988] [internal quotation marks omitted]).

The alleged conflict between federal and state law in this case arises from the fact that, although a claim based on 42 USC § 1983 for monetary damages against government officials in their personal capacity can generally be asserted in a New York court (*see generally Will v Michigan Dept. of State Police*, 491 US 58, 66 [1989]), Correction Law § 24 restricts a state court from exercising jurisdiction over such a cause of action if it involves DOCS employees. At first glance, this prohibition appears questionable under the Supremacy Clause since the United States Supreme Court has cautioned that "[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law" and that a "construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise" (*Martinez v California*, 444 US 277, 284 n 8 [1980] [internal quotation marks omitted]).

Upon closer scrutiny, however, the Supremacy Clause imposes no constitutional impediment to the operation of Correction Law § 24. The Supremacy Clause gives states the power to deny enforcement of a federal right if they have a " 'valid excuse' " for doing so (*Howlett*, 496 US at 369, quoting *Douglas v New York, N. H. & H. R. Co.*, 279 US 377, 388 [1929]). One permissible exception is when a state court lacks jurisdiction due to a "neutral state rule regarding the administration of the courts" (*Howlett*, 496 US at 372). The Supreme Court has explained that states "have great latitude to establish the structure and jurisdiction of their own courts" and that Congress must "take[ ] the state courts as it finds them" (*id.* [internal quotation marks omitted]; *see also Brown v Gerdes*, 321 US 178, 189 [1944, Frankfurter, J., concurring] ["(t)he Constitution does not require New York to give jurisdiction to its courts against its will"]; *National Private Truck Council, Inc. v Oklahoma Tax Comm'n*, 515 US 582, 587 n 4 [1995]).

A corollary to this principle is that a state rule will be deemed "neutral" and "valid" if it does not discriminate against federal claims in favor of analogous state claims (*see McKnett v St. Louis & San Francisco R. Co.*, 292 US 230, 233-234 [1934]). In other words, if the same type of claim, "arising under state law, would be enforced in the state courts, the state courts are generally not free to refuse enforcement of the federal claim" (*Martinez v California*, 444 US at 283-284 n 7). Ultimately, what the Supremacy Clause prohibits is refusal by a state court to entertain a suit for the sole reason that the cause of action arises under federal law (*see Howlett*, 496 US at 373, citing *McKnett*, 292 US at 233-234; *Murnan v Wabash Ry. Co.*, 246 NY 244, 247 [1927]).

Thus, the policy underlying the Supremacy Clause is to maintain an equilibrium between state and federal causes of action: if a state court opens its doors to a state cause of action, it must also allow related federal claims to be heard; but if the state does not hear a particular state claim, it may also decline to consider related federal causes of action in its state courts (*see generally Missouri ex rel. Southern R. Co. v Mayfield*, 340 US 1, 4 [1950]). As a result, if a state permits a litigant to assert a state cause of action, it cannot use a sovereign immunity defense to defeat a section 1983 action premised on the same offending conduct (*see Howlett*, 496 US at 379-381). But if a state does not extend jurisdiction to its courts to litigate a certain type of claim, it may deprive those courts of jurisdiction over a related federal claim. In that situation, there is no Supremacy Clause violation because there is no discrimination against the federal claim in favor of similar state claims (*see e.g. McKnett*, 292 US at 233-234). And it follows that if the jurisdiction of a state court does not embrace a certain claim, a litigant cannot evade that rule by raising the same state claim in federal court under the doctrine of pendent jurisdiction (*see Baker v Coughlin*, 77 F3d 12, 15 [2d Cir 1996]). The equality requirement of the Supremacy Clause is satisfied in each of these situations because litigants stand on the same footing—regardless of whether they choose to invoke the authority of a state or federal court—and there is no incentive to engage in the repudiated practice of forum shopping that "frequently and predictably produce[s] different outcomes in federal civil rights litigation based solely on whether that litigation takes place in state or federal court" (*Felder v Casey*, 487 US at 141).

Applying these precepts, we cannot say that Correction Law § 24 violates the Supremacy Clause. The statute, by emphasiz-

ing that "[n]o civil action shall be brought in any court of the state," creates a neutral jurisdictional barrier to all claims—state and federal—for monetary damages in a state court against any correction officer in his or her personal capacity for actions within the scope of employment. Section 24, therefore, does not discriminate against section 1983 actions " 'solely because the suit is brought under a federal law' " (*Howlett*, 496 US at 373, quoting *McKnett*, 292 US at 233-234; *see Murnan v Wabash Ry. Co.*, 246 NY at 247)—it applies with equal force to all state and federal claims based on the identity of the defendant[6] and the alleged conduct at issue (*see Woodward v State of New York*, 23 AD3d at 854; *Cepeda v Coughlin*, 128 AD2d 995, 997 [3d Dept 1987], *lv denied* 70 NY2d 602 [1987]; *cf. Meehan v Illinois Power Co.*, 347 Ill App 3d 761, 767, 808 NE2d 555, 562 [App Ct 2004] [no Supremacy Clause violation regarding refusal to permit claims based on federal age discrimination statute because "(a)ll cases involving age discrimination, whether based on federal law or state law, are barred from Illinois circuit courts"], *lv denied* 211 Ill 2d 582, 823 NE2d 967 [2004]). Put simply, because Correction Law § 24 does not treat section 1983 claims differently than it treats related state law causes of action, the Supremacy Clause is not offended.[7]

Nor does the fact that a plaintiff can sue the state directly in the Court of Claims alter our analysis. Ordinarily, a state cannot be sued under 42 USC § 1983 because states are not considered to be "persons" within the purview of the federal statute (*see Will v Michigan Dept. of State Police*, 491 US at 65). Although states are excluded from section 1983 liability, the New York Legislature has recognized that the State of New York is, in effect, the real party in interest when there is a challenge to a correction officer's alleged conduct arising from the discharge of official duties. As a result, the state provides repre-

**6.** Section 24 operates without regard to the identity of the plaintiff, such as when a correction officer seeks to sue his superior officers for civil rights violations (*see Woodward v State of New York*, 23 AD3d at 853).

**7.** Cases such as *Howlett* and *Felder*, relied upon by plaintiff and the dissent, are distinguishable from this case. In *Howlett*, for example, the state provided an immunity defense to the section 1983 action that did not apply to related state law claims and that would not have been available if the action had been commenced in federal court (*see* 496 US at 359, 364). Similarly, in *Felder*, state law imposed a notice of claim requirement on section 1983 claims that would not apply if the action had been initiated in federal court (*see* 487 US at 141). In both cases, the state laws upset the equilibrium the Supremacy Clause was designed to maintain and were therefore unconstitutional.

sentation and indemnification for correction officers sued for conduct occurring within the scope of employment (*see* Public Officers Law § 17 [2], [3]). Section 24 (2) further reflects this assumption of responsibility by allowing for the recovery of certain damages against the state in the Court of Claims.[8] Correction Law § 24 therefore creates an exclusive forum for plaintiffs seeking redress of claims against the state—the Court of Claims—despite the absence of jurisdiction in state courts to entertain claims of civil rights violations against those employees directly. By restricting the forum for a certain type of claim to a particular state court, the Legislature did nothing more than exercise its prerogative to establish the subject matter jurisdiction of state courts in a manner consistent with New York's conditional waiver of sovereign immunity, which does not allow civil rights claims to proceed against the state in Supreme Court.

In our view, New York does not discriminate against section 1983 claims by allowing state, but not federal, actions involving DOCS employees to be adjudicated in the Court of Claims since it was Congress that decided to exempt the states as responsible parties from the purview of the federal statute. Furthermore, federal law acknowledges that states can be sued by individuals only in state courts unless sovereign immunity is waived or abrogated (*see* US Const Amend 11; *Seminole Tribe of Fla. v Florida*, 517 US 44, 54 [1996]). Moreover, litigants like plaintiff can use the federal courts to pursue section 1983 claims against individual defendants and seek all of the rights and remedies available under the federal act, although a section 1983 claim brought against a correction officer in federal court cannot raise analogous, jurisdictionally barred state law claims (*see Baker v Coughlin*, 77 F3d at 15). Thus, when Correction Law § 24 applies, New York courts necessarily adjudicate only state claims brought against the state and federal courts adjudicate only federal causes of action brought against individuals. In the end, New York does not discriminate against section 1983 actions in favor of analogous state law claims because Correction Law § 24 removes subject matter jurisdiction over any cause of action— state or federal—for money damages in state Supreme Court for conduct by DOCS employees. Consequently, section 24 does not violate the Supremacy Clause.

---

**8.** New York's waiver of sovereign immunity is conditioned on submission to the exclusive jurisdiction of the Court of Claims (*see* NY Const, art VI, § 9; Court of Claims Act § 8).

Accordingly, the orders of the Appellate Division should be affirmed, without costs.

JONES, J. (dissenting). The question before this Court is whether Correction Law § 24 violates the Supremacy Clause insofar as it bars litigants from bringing 42 USC § 1983 claims for money damages in state court against DOCS employees for actions committed within the scope of their employment. As interpreted by the majority, section 24 frustrates the purpose of, and is inconsistent with, section 1983. Specifically, section 24 (1) burdens the litigation of section 1983 actions by preventing state courts from adjudicating claims for money damages—even where such courts have jurisdiction over the parties and the type of claim brought—while, at the same time, allowing the court to adjudicate state law actions involving the same conduct by DOCS employees; and (2) immunizes a select group of state employees from section 1983 damages claims where other state employees are not similarly immunized. The majority and the State argue, however, that state courts can decline to exercise their concurrent jurisdiction over section 1983 money damages claims against DOCS employees because Correction Law § 24 affords New York State a "valid excuse" (i.e., a neutral rule of judicial administration limiting subject matter jurisdiction) for doing so. Contrary to the majority's conclusion, section 24 cannot withstand a challenge under the Supremacy Clause. Accordingly, I dissent and would reverse the orders of the Appellate Division, reinstate plaintiff's claims and remand both actions to Supreme Court for further proceedings.

I.

Correction Law § 24 (entitled "Civil actions against [DOCS] personnel") states:

> "1. *No civil action shall be brought* in any court of the state, except by the attorney general on behalf of the state, *against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.*
>
> "2. Any [such] claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of

the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state'' (emphasis added).

We have stated that the purpose of section 24 is to ensure that DOCS employees, when acting within the scope of employment, freely perform their dangerous duties of maintaining safety and security within correctional facilities without fear of being subjected to voluminous, vexatious and, in many cases, meritless suits brought by prisoners and being held personally liable should a prisoner prevail (see Arteaga v State of New York, 72 NY2d 212, 219 [1988]).

The majority opinion provides a detailed description of plaintiff's present claims, and several previous ones (see majority op at 484-485), apparently to suggest that the claims are frivolous, which they may well be. I recognize that the problem of baseless lawsuits by prisoners against corrections officers is a serious one; Congress, however, enacted section 1983 to deal with an even more serious problem—i.e., violations of citizens' rights by those acting under the color of state law.

Section 1983 is the current version of section 1 of the Civil Rights Act of 1871, one of the post-Civil War Reconstruction-Era civil rights statutes Congress enacted.[1] Section 1983 states:

---

1. The purpose of the Civil Rights Act of 1871 was to address the lawlessness in the southern states after the Civil War (see Cong Globe, 42nd Cong, 1st Sess, at 236 [1871]) and to enforce the provisions of the Fourteenth Amendment (see Monroe v Pape, 365 US 167, 171 [1961], overruled by Monell v New York City Dept. of Social Servs., 436 US 658 [1978] [Monroe was overruled insofar as it held that local governments are wholly immune from suit under section 1983]). As the Supreme Court stated:

"The [Act] grew out of a message sent to Congress by President Grant on March 23, 1871, reading:

" 'A condition of affairs now exists in some States of the Union rendering life and property insecure and the carrying of the mails and the collection of the revenue dangerous. The proof that such a condition of affairs exists in some localities is now before the Senate. That the power to correct these evils is beyond the control of State authorities I do not doubt; that the power of the Executive of the United States, acting within the limits of existing laws, is sufficient for present emergencies is not clear. Therefore, I urgently recommend such legislation as in the judgment of Congress shall effectually secure life, liberty, and property, and the enforcement of law in all parts of the United States. . . .'

"[The legislation, which was enacted on April 20, 1871, had three main aims.]

> *"Every person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, *any citizen of the United States or other person within the jurisdiction thereof* to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress" (emphasis added).

Thus, section 1983 permits an individual deprived of his or her federal civil rights by person(s) acting under color of state law (i.e., government officials) to bring a civil suit against the state actor(s), in their *personal capacity,* for compensatory relief. Moreover, the Supreme Court stated that section 1983 was meant to create

> "a species of liability in favor of persons deprived of their federal civil rights by those wielding state authority. . . . '[T]he central objective of the Reconstruction-Era civil rights statutes . . . is to ensure that individuals whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief.' Thus, *[section] 1983* provides 'a uniquely federal remedy against incursions . . . upon rights secured by the Constitution and laws of the Nation,' and *is to be accorded 'a sweep as broad as its language.'*
>
> *"Any assessment of the applicability of a state law to federal civil rights litigation, therefore, must be made in light of the purpose and nature of the federal right.* This is so whether the question of

---

"*First,* it might . . . override certain kinds of state laws. . . .

"*Second,* it provided a remedy where state law was inadequate. . . .

"The *third* aim was to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice. . . .

"The debates are replete with references to the lawless conditions existing in the South in 1871. . . . It was not the unavailability of state remedies but the failure of certain States to enforce the laws with an equal hand that furnished the powerful momentum behind this 'force bill.' . . .

"[T]he remedy created was . . . against those who representing a State in some capacity were *unable* or *unwilling* to enforce a state law" (*Monroe,* 365 US at 172-176 [footnotes omitted]).

state-law applicability arises in [section] 1983 litiga-
tion brought in state courts, which possess concur-
rent jurisdiction over such actions, or in federal-
court litigation" (*Felder v Casey*, 487 US 131, 139
[1988] [emphasis added and citations omitted]).

Bottom line, Congress decided that the threat of abuse of
citizens by those acting under color of state law was real enough
to justify creating the section 1983 cause of action—even though
many section 1983 cases lack merit. Accordingly, the State of
New York is not free to decide that DOCS employees must be
immune from such suits. In any event, the issue here is not
whether plaintiff has a right to bring these claims—he clearly
does—but whether state courts, as well as federal courts, must
bear the burden of adjudicating them. In my view, state courts
cannot selectively escape this responsibility. However, over the
years, New York State courts have (*see* Steven H. Steinglass, *an
Introduction to State Court Section 1983 Litigation*, in Sword
and Shield, A Practical Approach to Section 1983 Litigation, at
153 [ABA 3d ed 2006] [stating that "(t)he most flagrant example
of a state court system selectively excluding (section) 1983 cases
is the refusal of the New York courts to entertain (section) 1983
actions against state correctional officials"]).

Although the State of New York *generally* has the freedom to
fix the rules of subject matter jurisdiction its courts must follow,
it does not have the authority to enact a statute that violates or
is inconsistent with federal law—for example, a statute im-
munizing "an official from liability for injuries compensable
under federal law" (*Howlett v Rose*, 496 US 356, 361 [1990], cit-
ing *Martinez v California*, 444 US 277 [1980])—and simply re-
fer to the statute as a neutral rule of subject matter jurisdiction
that serves as a valid excuse for Supremacy Clause purposes. In
enacting Correction Law § 24, however, the State Legislature
has put forth a statute immunizing official conduct otherwise
actionable under federal law. Section 24 is, therefore, inconsis-
tent with section 1983 and violative of the Supremacy Clause.

## II.

Under the Supremacy Clause (US Const art VI [2]), federal
law is "the supreme Law of the Land." The Supreme Court
explained:

"[f]ederal law is enforceable in state courts not
because Congress has determined that federal courts

would otherwise be burdened or that state courts might provide a more convenient forum—although both might well be true—but because the Constitution and laws passed pursuant to it are as much laws in the States as laws passed by the state legislature. The Supremacy Clause makes those laws the supreme Law of the Land, and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure. The laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are. . . . The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent" (*Howlett*, 496 US at 367 [citations and internal quotation marks omitted]).

Federal and state courts, therefore, have concurrent jurisdiction over federal actions and state courts have a duty to enforce federal law to the same extent as federal courts *except* where a valid excuse to the exercise of such jurisdiction exists. Discussing this "valid excuse" exception, the Supreme Court articulated three corollaries:

"1. A state court may not deny a federal right, when the parties and controversy are properly before it, in the absence of valid excuse. . . . The existence of the jurisdiction creates an implication of duty to exercise it. . . .

"2. An excuse that is inconsistent with or violates federal law is not a valid excuse . . . .

"3. When a state court refuses jurisdiction because of a neutral state rule regarding the administration of the courts, we must act with utmost caution before deciding that it is obligated to entertain the claim. . . . The requirement that a state court of competent jurisdiction treat federal law as the law of the land does not necessarily include within it a requirement that the State create a court competent to hear [a] case in which the federal claim is pre-

sented. The general rule . . . is that federal law takes the state courts as it finds them. . . . The States thus have great latitude to establish the structure and jurisdiction of their own courts. . . . In addition, States may apply their own neutral procedural rules to federal claims, unless those rules are [preempted] by federal law" (*id.* at 369-372 [citations and internal quotation marks omitted]).

Accordingly, a state may enact legislation limiting its subject matter jurisdiction over claims otherwise within its purview as long as the legislation is supported by a valid excuse. If a state applies a *neutral* rule of judicial administration, the state has a valid excuse for refusing to provide a court of competent jurisdiction to hear such claims. For the reasons set forth below, Correction Law § 24 is not a valid excuse.

First, the Supreme Court has not deemed the type of "jurisdictional" rule at bar—the effect of which is that section 1983 damages claims against one group of state employees are barred while identical claims against other state employees are allowed—to be a valid excuse. There have only been three cases in which the Supreme Court has held that a valid excuse exists for a state court's refusal to entertain a federal claim. These cases involved neutral rules of judicial administration—all markedly different from section 24—where the state court dismissed the federal claim: (1) on forum non conveniens grounds;[2] (2) because the parties were nonresidents of the forum state;[3] or (3) because the federal claim arose outside of the state's territorial jurisdiction[4] (*see Howlett*, 496 US at 374-375). Moreover, in determining what would be an acceptable valid excuse, the Supreme Court cautioned that "[t]he fact that a rule is denominated jurisdictional does not provide a court an excuse to avoid the obligation to enforce federal law if the rule does not reflect the concerns of power over the person and competence over the subject matter that jurisdictional rules are

**2.** *See Missouri ex rel. Southern R. Co. v Mayfield*, 340 US 1, 4 (1950) (holding that state court could apply the forum non conveniens doctrine to bar adjudication of action under Federal Employer's Liability Act [FELA] if the state "enforce[d] its policy impartially so as not to involve a discrimination against [FELA] suits" [citation omitted]).

**3.** *See Douglas v New York, N. H. & H. R. Co.*, 279 US 377 (1929) (holding that state statute properly permitted discretionary dismissal of both federal and state claims where neither party was a resident of the forum state).

**4.** *See Herb v Pitcairn*, 324 US 117, 123 (1945).

designed to protect" (*id.* at 381). As will be made clear below, Correction Law § 24 does neither.

Second, the majority's view that section 24 does not discriminate against section 1983 damages claims is based, in my view, on an unduly narrow reading of United States Supreme Court precedent. In *Martinez*, the Supreme Court held that a California statute immunizing government conduct was not controlling in section 1983 litigation, even where such litigation took place in state court, because the application of the State's immunity law would thwart the remedial purpose of section 1983 (444 US at 284). In so holding, the Court observed that "where the same type of claim, if arising under state law, would be enforced in the state courts, the state courts are generally not free to refuse enforcement of the federal claim" (*id.* at 283 n 7).

At issue in *Felder* was a Wisconsin notice-of-claim statute, which effectively shortened the statute of limitations for those seeking to assert federal civil rights claims. The Supreme Court held that the Wisconsin statute was preempted to the extent that it applied to section 1983 claims because the statute conflicted in both *purpose and effect* with the remedial objectives of section 1983, and its application to a section 1983 claim brought in state court could yield a different outcome than if it were brought in federal court (487 US at 138, 152). Although the statute in *Felder* did not purport to limit the jurisdiction of Wisconsin courts, if it had, the Court would have reached the same result (*see Howlett*, 496 US at 382-383 [stating that "(t)he force of the Supremacy Clause is not so weak that it can be evaded by mere mention of the word 'jurisdiction' "]).

Moreover, in *Howlett*, the Supreme Court considered whether a Florida statute in which the State waived sovereign immunity from state tort actions—but not from section 1983 claims—against state defendants was a jurisdictional limitation on the power of the Florida state courts. The Court held that the statute violated the Supremacy Clause because the state courts entertained similar state claims not subject to the sovereign immunity defense; as such, section 1983 claims could not be precluded (*see Howlett*, 496 US at 375). Significantly, the Court noted that once a state opens its courts to hear section 1983 actions, it may not selectively exclude certain section 1983 actions by denominating state policies as jurisdictional (*id.* at 381).

In light of the foregoing, the majority's nondiscrimination and "equality requirement" arguments are unavailing. I ac-

knowledge that Congress cannot require New York State to *create* a court of competent jurisdiction to entertain section 1983 claims. Here, however, one such court exists. New York State supreme courts are courts of general (i.e., "original, unlimited and unqualified") jurisdiction (NY Const, art VI, § 7; *Kagen v Kagen*, 21 NY2d 532, 537 [1968]) that already hear and adjudicate state law claims for damages *and* all section 1983 claims—including claims for declaratory and injunctive relief *and* claims where money damages are sought—*against state employees* (*except those employed by DOCS*). Since the same type of state law claim—and federal law claim for that matter—is enforceable in state supreme court, the State cannot selectively refuse to enforce the federal claim.

Further, as noted by the majority, the State Legislature determined that the State, and not DOCS employees, should be liable for the wrongful conduct committed within the scope of employment (*see* Correction Law § 24 [2]). This policy judgment logically flows from the above-mentioned purpose of section 24. However, under the Supremacy Clause, "[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield" (*Felder*, 487 US at 138 [internal quotation marks omitted]). Thus, neither the State's policy judgment nor the purpose underlying such judgment qualifies as a neutral rule of judicial administration.

Third, in resolving the issue at bar, the *broad* goals and objectives of section 1983, and for that matter its progenitor (the Civil Rights Act of 1871), must be taken into account. Specifically, this Court should determine whether

> "the application of the [state statute] to § 1983 actions brought in state courts [is] consistent with the goals of the federal civil rights laws, or [whether] the enforcement of [the state statute] instead stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" (*id.* [internal quotation marks omitted]).

Here, Correction Law § 24, which by its plain terms immunizes DOCS employees from liability for certain conduct ac-

tionable under section 1983,[5] is inconsistent with section 1983's remedial purposes in several important respects. For those litigants who bring their section 1983 claims in state court, section 24: (1) interferes with section 1983 by barring litigants from receiving compensatory relief *directly* from the individual state actor(s) who committed the actionable conduct; and (2) places significant obstacles in front of litigants seeking to secure a full recovery.[6]

Additionally, a state may not extend its sovereign immunity and pass legislation immunizing "an official from liability for injuries compensable under federal law" (*Howlett*, 496 US at 360, citing *Martinez*). Comparing the statutes in *Howlett* and the case at bar makes clear that both states sought to cloak their officials in their own sovereign immunity. Put simply, under the statute in *Howlett*, the school board was "the state" and therefore immune. Here, damages suits based on the employees' actions can only be brought "as a claim against the state" (Correction Law § 24 [2]).[7] The result, in both cases, is that plaintiff's only state-court remedy is a suit against the State, which, pursuant to the Eleventh Amendment of the Federal Constitution and for section 1983 purposes, is not a "person" that can be held liable under section 1983.[8] Therefore, plaintiffs are left with no remedy in state court against those individuals who would be liable under section 1983. Given the goals and objectives of section 1983, Congress could not have envisioned such a result.

---

**5.** *See Baker v Coughlin*, 77 F3d 12, 15 (2d Cir 1996) (holding that "by its plain terms, [section] 24 governs the substantive rights of corrections officers by conferring upon them an immunity from liability for activities that fall within the scope of the statute").

**6.** Under section 24, a litigant can bring section 1983 actions for declaratory and injunctive relief in state court. However, if the litigant is to have a full recovery, as contemplated by section 1983, he or she must seek money damages in federal court. Thus, to obtain a full recovery, a litigant has to split claims and bring two separate actions in two separate jurisdictions. This places an onerous burden on litigants. (*See also Woodward v State of New York*, 23 AD3d 852, 857 [3d Dept 2005, Kane, J., dissenting].)

**7.** By this requirement, section 24 has redefined and limited the section 1983 cause of action, i.e., it eliminates a plaintiff's federal right to sue a DOCS employee, in his or her personal capacity, for damages in state court.

**8.** *See Howlett*, 496 US at 365 (stating "[a]s we held last Term in *Will* v. *Michigan Dept. of State Police*, 491 U. S. 58 [1989], an entity with Eleventh Amendment immunity is not a 'person' within the meaning of [section] 1983").

### III.

In conclusion, I stress two points which make clear why the Appellate Division order should be reversed. First, if you strip away the veneer of the majority's arguments, section 24—a statute which, on its face, precludes anyone, including other DOCS employees and prisoners, from bringing damages claims against DOCS personnel—is not a *neutral* jurisdictional barrier to a particular type of claim. In reality, section 24 functions as an immunity statute that allows state courts to selectively exclude prisoner suits for damages against DOCS personnel. Second, contrary to the majority's view, section 24 simply does not fall under the category of what could be a "valid excuse" (i.e., section 24 does not reflect the concerns of power over the litigants and competence over subject matter). Here, the state supreme court has jurisdiction over the parties and, based on the State's willingness to allow the adjudication of *all* section 1983 claims against *other* state employees, competence over the type of claim at bar. Further, plaintiff's claims arose *within* the State's territorial jurisdiction. Based on the foregoing, Correction Law § 24 does not afford a valid excuse to selectively exclude section 1983 damages suits against DOCS personnel and is, therefore, constitutionally infirm under the Supremacy Clause.

Chief Judge KAYE and Judges CIPARICK and READ concur with Judge GRAFFEO; Judge JONES dissents and votes to reverse in a separate opinion in which Judges SMITH and PIGOTT concur.

Orders affirmed, without costs.