# IN THE COURT OF APPEALS OF IOWA

No. 23-1924
Filed May 21, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**WILL EARNEST YOUNG JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

A defendant appeals his convictions and sentences for willful injury causing serious injury and intimidation with a dangerous weapon with intent. **AFFIRMED.**

Alan R. Ostergren (argued) of Alan R. Ostergren, PC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Zachary Miller (argued), Assistant Attorney General, for appellee.

Heard at oral argument by Tabor, C.J., and Schumacher, Badding, Buller, and Sandy, JJ.

**BADDING, Judge.**

Late at night in downtown Waterloo, a sidewalk brawl broke out between Joseph Ayala, Will Young Jr., and Young's brother, Willis Brown.  It ended when Young shot Ayala three times below the waist.  The State charged Young with willful injury causing serious injury and intimidation with a dangerous weapon with intent.  At trial, Young raised a justification defense, arguing he shot Ayala to protect his brother.  The jury found Young guilty as charged, and the district court sentenced him to consecutive prison terms, each carrying a five-year minimum.

Young appeals, claiming he was denied effective assistance of counsel when his attorney failed to object to a legal error in the district court's instructions. Although Iowa Code section 814.7 (2023) prohibits that ineffective assistance claim from being decided on direct appeal, Young urges the statute is unconstitutional under the Supremacy Clause of the United States Constitution. Young also contends that the State failed to prove the "reasonable apprehension" element of his intimidation charge, and that the court was unaware it had discretion to reduce the minimum sentences.

## I.      Background Facts and Proceedings

On November 8, 2020, Young and Brown went to a bar in downtown Waterloo to drink beer and shoot pool.  Near closing time, another patron, Ayala, made a comment that angered Brown.  Sensing the start of an argument, the bartender told everyone to leave.  So Brown went outside to smoke a cigarette, with Young close behind him.  Ayala and his friend, Ricky Ledesma, paid their tab and followed.

Outside the bar, a fight broke out between Ayala and the brothers. Security cameras from nearby businesses captured some of the action. Ayala—a former amateur mixed martial arts fighter—threw the first punch at Young. Brown then tackled Ayala to the ground and punched him repeatedly. But according to Young, Ayala had the upper hand. As Brown and Ayala regained their feet, Young raised a pistol and shot Ayala three times. Young and Brown left the scene as nearby officers quickly responded to the shooting. Young later testified that he thought shooting Ayala was the only way to protect his brother.

The State charged Young with willful injury causing serious injury, in violation of Iowa Code section 708.4(1) (2020), and intimidation with a dangerous weapon with intent, in violation of Iowa Code section 708.6(1). Young claimed justification. In an unchallenged instruction, the district court told the jury that Young was not entitled to that defense if he shot Ayala while "participating in Willful Injury Causing Serious Injury," or if Young "was not lawfully present or was engaged in the illegal activity of Assault . . . in the place where he used force, he made no effort to retreat, and retreat was a reasonable alternative to using force." The jury found Young guilty as charged and, by special interrogatory, found he was armed with a dangerous weapon. He was sentenced to consecutive terms of imprisonment of up to ten years, with a five-year minimum on both counts.

On appeal, Young asserts three claims of error. First, he argues that he was denied his Sixth Amendment right to effective assistance of counsel when his attorney failed to object to the district court's justification instruction. Young recognizes that Iowa Code section 814.7 prohibits that claim from being decided on direct appeal. But he argues the Supremacy Clause requires Iowa courts to

resolve questions of federal law when the record is sufficient to do so—a constitutional challenge that has not yet been considered by our supreme court. Second, Young challenges the sufficiency of the evidence to support the "reasonable apprehension" element of his intimidation charge. Third, Young contends he must be resentenced because the district court failed to recognize that it had discretion under section 910.10(1) to reduce the otherwise applicable minimum prison term in section 902.7.

## II. Standard of Review

"We review challenges to the constitutionality of a statute de novo." *State v. Treptow*, 960 N.W.2d 98, 107 (Iowa 2021). Sufficiency of the evidence claims are reviewed for correction of errors at law. *State v. Mong*, 988 N.W.2d 305, 312 (Iowa 2023). Sentencing challenges are also reviewed for correction of errors at law, although a sentence within statutory limits will not be reversed "absent an abuse of discretion or some defect in the sentencing procedure." *State v. Letscher*, 888 N.W.2d 880, 883 (Iowa 2016) (citation omitted).

## III. Analysis

### A. Iowa Code section 814.7

The Iowa constitution authorizes the general assembly "to provide for a general system of practice in all the courts of this state." Iowa Const. art. V, § 14. Criminal appeals alleging ineffective assistance of counsel are one area in which the legislature has exercised its authority to regulate appellate practice:

> An ineffective assistance of counsel claim in a criminal case shall be determined by filing an application for postconviction relief pursuant to chapter 822. The claim need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for

postconviction relief purposes, and the claim shall not be decided on direct appeal from the criminal proceedings.

Iowa Code § 814.7 (2023).  Previously, a defendant in Iowa "could raise a claim of ineffective assistance of counsel on direct appeal," and our appellate courts "had the authority to either decide the claim or preserve it for further development in postconviction-relief proceedings."  *State v. Tucker*, 959 N.W.2d 140, 145 (Iowa 2021).  But in 2019, the legislature amended the statute to require all ineffective assistance claims to "be decided in the first instance in postconviction-relief proceedings rather than on direct appeal."  *Id.*

Long before the amendment to section 814.7, the Iowa Supreme Court recognized that most ineffective-assistance claims were better left for postconviction relief proceedings, where they could be resolved on a complete record following an evidentiary hearing.  *See id.* at 152 (collecting cases).  As a result, our supreme court found in *Treptow* that the statute "worked no significant change in appellate practice" but merely "codified more strongly our 'judicial practice stretching back for almost a half-century.'"  960 N.W.2d at 103 (citation omitted).  Young disagrees.  He contends the 2019 amendment went a step too far when it banished all ineffective assistance claims from consideration on direct appeal.  According to Young, the Supremacy Clause requires Iowa appellate courts to resolve a federal question when the record is sufficient to do so.

There is no federal constitutional right to appellate review of criminal convictions.  *Halbert v. Michigan*, 545 U.S. 605, 610 (2005).  But once a state

chooses to create a right of appeal, constitutional protections attach.[1]  *Id.*  The Iowa Supreme Court has already determined that requiring defendants to save their ineffective-assistance claims for postconviction review does not offend equal protection or due process.  *Treptow*, 960 N.W.2d at 107, 108.  It also rejected a challenge to section 814.7 on separation-of-powers grounds.  *See Tucker*, 959 N.W.2d at 151.  However, neither case confronted the particular issue that Young raises here—whether a state court may refuse to consider a ripe federal constitutional issue on direct appeal.  To answer that question, this court must look to some basic principles of federalism and follow the trail of breadcrumbs left by the supreme court in *Treptow* and *Tucker*.

In our two-sovereign system, "[t]he laws of the United States are laws in the several States, and just as much binding on the citizens and courts thereof as the State laws are."  *Howlett v. Rose*, 496 U.S. 356, 367 (1990) (citation omitted).  "The Supremacy Clause makes those laws 'the supreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure."  *Id.* (quoting U.S. Const. art. VI).  But that doesn't mean states must provide a forum for every federal claim.  "[F]ederal law takes the state courts as it finds them."  *Id.* at 372 (citation omitted).  The Supreme Court has made clear that states have "great latitude to establish the structure and jurisdiction of their own courts," and so state courts are free to "apply their own neutral procedural rules to federal claims."  *Id.*

---

[1] For example, the Equal Protection Clause prohibits states from conditioning appellate access on a defendant's ability to pay, *see Griffin v. Illinois*, 351 U.S. 12, 18–19 (1956), and from denying counsel to indigent defendants in certain appeals, *see Douglas v. California*, 372 U.S. 353, 357–58 (1963).

One such rule was discussed in *Johnson v. Fankell*, 520 U.S. 911 (1997). In that case, Idaho officials filed a notice of appeal from a state court summary judgment order rejecting their argument that a plaintiff's § 1983 claims were barred by qualified immunity. *Johnson*, 520 U.S. at 913–14. The Idaho Supreme Court dismissed the appeal, citing the state's final-judgment rule. *Id.* at 914. But the officials argued Idaho's appellate rule was preempted by federal law in their case— partly because defendants in federal court may immediately appeal the denial of qualified immunity. *Id.* at 918. The Supreme Court disagreed, deeming the state final-judgment rule a neutral procedural requirement. *Id.* Even though the officials did not enjoy the same procedural advantages available under federal law, the Court found their substantive rights under § 1983 were "fully protected" in Idaho court. *Id.* at 921.

There is, however, a limit to the constitution's tolerance for state procedural rules. In *Haywood v. Drown*, an inmate's § 1983 claims were dismissed by a New York trial court pursuant to a state statute limiting jurisdiction over damages claims against state prison officials. 556 U.S. 729, 733 (2009). According to the statute, the sole remedy for a prisoner seeking damages from a state correctional officer was to bring a claim against the state itself in the New York Court of Claims, outside the framework of § 1983. The plaintiff argued this rule violated the Supremacy Clause. *See id.* at 732. But in the view of the New York Court of Appeals, the statute was a neutral administrative requirement that treated state and federal damages claims alike. *See Haywood v. Drown*, 881 N.E.2d 180, 184 (N.Y. 2007).

The Supreme Court reversed, explaining that "although States retain substantial leeway to establish the contours of their judicial systems, they lack

authority to nullify a federal right or cause of action they believe is inconsistent with their local policies." *Haywood*, 556 U.S. at 736. A five-justice majority found that the New York statute—although framed as a jurisdictional rule—effectively immunized correctional defendants from § 1983 liability and thereby extinguished a category of claims available under federal law. *Id.* at 736 & n.5. "A jurisdictional rule cannot be used as a device to undermine federal law, no matter how evenhanded it may appear."[2] *Id.* at 739. The Court held that New York's law was an "immunity statute cloaked in jurisdictional garb," interfering with federal policy in violation of the Supremacy Clause. *Id.* at 742.

Young likens Iowa Code section 814.7 to the New York statute at issue in *Haywood*. He argues that the Iowa legislature, "[h]aving created a right to direct appeal of criminal convictions, . . . cannot 'shut the courthouse door to federal claims that it considers at odd with its local policy.'" Young acknowledges "most ineffective-assistance-of-counsel claims will require factual development in a collateral proceeding," and he concedes that "[t]he Sixth Amendment does not require the Court to consider" those claims. But he contends that the Supremacy Clause prohibits Iowa courts from "ignor[ing] a claim which is squarely presented" on direct appeal.

Section 814.7's limitation on ineffective-assistance claims is not like the jurisdictional rule at issue in *Haywood*. To start, section 814.7 is not jurisdictional; it merely "limits the authority of Iowa's appellate courts to resolve ineffective-

---

[2] The Court reiterated this principle earlier this year in *Williams v. Reed*, a similar § 1983 case in which the majority deemed an Alabama administrative-exhaustion requirement unconstitutional because it "functionally immunize[d] defendants from a class of § 1983 claims in state court." 145 S. Ct. 465, 472 (2025).

assistance claims on direct appeal." *State v. Rutherford*, 997 N.W.2d 142, 145 (Iowa 2023) (citation omitted). But more importantly, the statute does not abridge a criminal defendant's federal substantive rights. Under Iowa's framework, criminal defendants who claim ineffective assistance in violation of the Sixth Amendment are not precluded from seeking relief in Iowa courts. Although they must use postconviction-relief proceedings, the same remedies remain available for an established constitutional violation. *See* Iowa Code § 822.7 (providing that, upon a finding for a postconviction petitioner, the court "shall enter an appropriate order with respect to the conviction or sentence in the former proceedings"); *Ruiz v. State*, 912 N.W.2d 435, 443 (Iowa 2018) (discussing some of the remedies available upon a successful postconviction claim of ineffective assistance).

Nothing about this requirement conflicts with federal law. Although the Sixth Amendment right to counsel has been incorporated against the states for more than six decades, *see Gideon v. Wainwright*, 372 U.S. 335, 339–45 (1963), the Supreme Court has never held that an alleged violation of the right to effective assistance must be considered—for the first time—on direct appeal. To the contrary, the Court has recognized "there are sound reasons for deferring consideration of ineffective-assistance-of-trial-counsel claims until the collateral-review stage," given that they "often depend on evidence outside the trial record." *Martinez v. Ryan*, 566 U.S. 1, 13 (2012); *see also Tucker*, 959 N.W.2d at 152 (discussing the legitimate interests supporting the legislature's determination that ineffective-assistance claims should be resolved in the first instance in postconviction-relief proceedings); *Treptow*, 960 N.W.2d at 108 (same). Thus, a state does not "act[] with any impropriety by reserving [a] claim of ineffective

assistance for a collateral proceeding." *Id.*; *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (permitting ineffective-assistance claims to be raised for the first time in a collateral proceeding, whether or not the petitioner could have raised the claim on direct appeal). Indeed, as our supreme court recognized in *Treptow*, "[r]equiring claims of ineffective assistance of counsel to be presented in the first instance in postconviction-relief proceedings is not uncommon." 960 N.W.2d at 107; *see also Tucker*, 959 N.W.2d at 152 ("Other courts have affirmed the constitutionality of statutes requiring certain claims be pursued in the first instance in postconviction-relief proceedings.").

Because federal law permits state courts to defer ineffective assistance claims for collateral review, section 814.7 does not "nullify a federal right" or "undermine federal law." *Haywood*, 556 U.S. at 736, 739. Iowa's approach may delay vindication of Young's federal rights, but that is not an affront to the Supremacy Clause. *See Johnson*, 520 U.S. at 921. As with the defendants claiming qualified immunity in *Johnson*, Young's right to effective assistance of counsel remains enforceable in Iowa courts.[3] Iowa Code section 814.7 is a "neutral procedural rule[]" properly regulating state adjudication of federal claims. *Howlett*, 496 U.S. at 372. Young's constitutional challenge accordingly fails, meaning that we lack authority to decide his ineffective-assistance claim on direct appeal.

---

[3] Indeed, Young's preemption argument is even less compelling than the one in *Johnson*. While the defendants in that case could point to a specific federal right allowing immediate appeals from qualified immunity decisions, Young cites no analogous federal rule that would entitle him to direct review of his ineffective-assistance claim.

**B.      Sufficiency of the Evidence**

Young next challenges the sufficiency of the evidence to support his conviction for intimidation with a dangerous weapon with intent. "This court reviews sufficiency of evidence claims for the correction of errors at law." *Mong*, 988 N.W.2d at 312 (citation omitted). The jury's verdict must stand if it is supported by substantial evidence. *Id.* "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). The court must "view the evidence in the light most favorable to the State," granting all "legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (citation omitted)

Young contends the State failed to show an "assembly of people" was placed in reasonable apprehension of serious injury by Young's conduct. But the jury was never asked to make that finding. The marshaling instruction provided that, to convict Young on his intimidation charge, the State needed to prove:

> 1. On or about the 8th day of November, 2020, the defendant did shoot or discharge a firearm within an assembly of people.
>
> 2. The firearm was a dangerous weapon, as explained in [other instructions].
>
> 3. Joseph Ayala actually experienced fear of serious injury and his fear was reasonable under the existing circumstances.
>
> 4. The defendant shot or discharged the firearm with the specific intent to injure or cause fear or anger in Joseph Ayala.
>
> 5. The defendant acted without justification.

Citing *State v. Ross*, Young argues that the third element of the district court's instruction departs from the statutory requirements for intimidation with a dangerous weapon. 845 N.W.2d 692, 701 (Iowa 2014) (holding that to prove an

offense under Iowa Code section 708.6 based on the discharge of a dangerous weapon "within an 'assembly of people,'" the State must show "at a minimum," that a defendant "placed two persons in the assembly in reasonable fear"). But Young did not raise this issue at trial, and his challenge on appeal is to the sufficiency of the evidence. "Where, as here, the defendant does not object to the relevant jury instruction, the instruction is 'the law of the case for purposes of reviewing the sufficiency of the evidence.'"[4] *State v. Schwartz*, 7 N.W.3d 756, 764 (Iowa 2024) (citation omitted). Consequently, the only question before the court is whether there was substantial evidence to support the jury's conclusion that the shooting caused Ayala reasonable fear of serious injury. *See State v. Clark*, No. 23-1313, 2024 WL 5153099, at *5 (Iowa Ct. App. Dec. 18, 2024) (observing on review for sufficiency of the evidence that "[u]nder the law of the case provided in the instructions, only [one victim] needed to experience fear of injury").

The reasonable apprehension element of a section 708.6 offense requires the State to present evidence on "the actual effect of the shooting on th[e] particular victim." *State v. White*, 319 N.W.2d 213, 216 (Iowa 1982). It is not enough to show that "a reasonable person in the position of the victim would have been frightened." *Id.* In *White*, a defendant discharged two shots without warning into an occupied vehicle, then sped away—but the supreme court found those facts insufficient to show the occupants experienced apprehension. *Id.* at 214, 216. Similarly, in *Mong*, a victim who was struck by a bullet as he was walking away

---

[4] Young argues that the law-of-the-case doctrine does not apply when a defendant "raises a claim of ineffective assistance of counsel in asserting the instructions were deficient." But for the reasons discussed above, we cannot reach Young's ineffective-assistance claim in this direct appeal. Iowa Code § 814.7.

from a fight testified he saw the defendant's gun but "wasn't too worried" because he "had no beef with [the defendant]." *See* 988 N.W.2d at 308, 315. The court found this testimony "showed [the victim] did not experience fear." *Id.*

Actual fear does not require direct evidence. *Ross*, 845 N.W.2d at 701. The State may rely on circumstantial facts to prove that a victim experienced fear. *White*, 319 N.W.2d at 216 (acknowledging a victim's "apprehension could be 'inferred' from the circumstances . . . in some cases, but not under this record"). For instance, evidence of a victim's flight from gunfire can support a reasonable inference that the victim experienced fear. *See State v. Foreman*, 19-0878, 2021 WL 591417, at *4 (Iowa Ct. App. Jan. 21, 2021) (finding sufficient evidence of actual fear where camera footage showed bar patrons fleeing the scene after shots were fired, and one woman became sick); *State v. Lee*, No. 08-1531, 2009 WL 3337666, at *2 (Iowa Ct. App. Oct. 7, 2009) (finding sufficient circumstantial evidence of a victim's fear where, after being shot in the back, the victim described getting down to avoid further injury).

Ayala never saw Young's gun. And he was in the middle of a fistfight with Brown when Young fired his shots. Footage from a nearby security camera captured the moment when Young discharged his weapon and Ayala fell to the ground. The video shows Ayala lying in the street for a few moments before trying to drag himself away. Within seconds, Ledesma breaks free from his own fight and goes to Ayala's aid. Both men then hurry to a bar across the street. At trial, the prosecutor asked Ayala, "Did being shot scare you?" Ayala responded, "[o]h, yeah," and testified that he was worried he was going to die.

The jury was free to credit Ayala's testimony about his own state of mind. *See Ross*, 845 N.W.2d at 701 (finding substantial evidence to support an intimidation conviction where the jury heard "testimony from two people that they subjectively experienced fear"). And Ayala's efforts to remove himself from the area of the fight after Young's shots lend circumstantial support to his recollection of being afraid. *See Foreman*, 2021 WL 591417, at *4.

Young counters that the State's evidence only shows Ayala "felt fear from *having been shot*," not fear "*because of the shooting*." But the fact that Ayala was shot does not rule out a reasonable inference that he feared further harm. *See Lee*, 2009 WL 3337666, at *2. A victim must be placed in fear "at a time at which he could reasonably have expected to be at risk of serious injury." *State v. Rivas*, No. 03–0511, 2004 WL 57660, at *4 (Iowa Ct. App. Jan. 4, 2004) (finding insufficient evidence to support an intimidation count for a victim who was unaware of the defendant's firefight with police until the morning after). Young remained on the sidewalk for roughly twenty seconds after the shooting, while Ayala retreated to the bar across the street. A rational jury could find Ayala remained in reasonable apprehension of serious injury during this time. We conclude that, as marshaled at trial, Young's conviction for intimidation with a dangerous weapon with intent is supported by sufficient evidence.

### C. Sentencing Discretion

Finally, Young contends the district court failed to appreciate its discretion to sentence him to less than a five-year minimum term of imprisonment on both counts. Iowa Code section 902.7 (2020) requires a sentencing court to impose a five-year minimum when the jury finds the defendant committed a forcible felony

while armed with a dangerous weapon—as was the case here. But an exception exists for a first-time offender. *See* Iowa Code § 901.10(1). When a defendant has no prior convictions under the dangerous-weapons enhancement in section 902.7, the court "may, at its discretion, sentence the person to a term less than provided by the statute if mitigating circumstances exist and those circumstances are stated specifically in the record." *Id.*

Although there is no dispute that Young had no prior convictions under section 902.7, the State urged the court to impose "mandatory five-year minimums" at sentencing. Young's counsel requested "seven years on each charge," without addressing the dangerous-weapon minimum. The district court imposed consecutive prison terms of up to ten years, finding "a five-year minimum is applicable to both Counts I and II." Young argues that—when viewed against the backdrop of the parties' sentencing recommendations—the court's sentence reflects a mistaken belief that the statutory minimums were mandatory. We disagree.

Sentencing decisions within statutory limits "are cloaked with a strong presumption in their favor." *State v. Duffield*, 16 N.W.3d 298, 302 (Iowa 2025) (citation omitted). "While the district court is required to demonstrate its exercise of discretion by stating on the record the reasons for imposing a particular sentence, it 'is generally not required to give its reasons for rejecting particular sentencing options.'" *State v. Smith*, 17 N.W.3d 355, 359 (Iowa 2025) (citation omitted). However, when "a court fails to exercise the discretion granted it by law because it erroneously believes it has no discretion, a remand for resentencing is required." *State v. Lee*, 561 N.W.2d 353, 354 (Iowa 1997). The burden is on the

defendant to show such a misunderstanding occurred. *State v. Wilbourn*, 974 N.W.2d 58, 67 (Iowa 2022).

In sentencing Young, the district court did not reference its discretion under section 901.10, nor did the court mention any mitigating factors favoring an exception. But neither of those facts is enough to overcome the presumption of regularity. *See State v. Thomas*, 547 N.W.2d 223, 226 (Iowa 1996) ("The fact the district court did not specifically mention the absence of mitigating circumstances is inconsequential since this court has recognized that the district court is not required to note them."); *State v. Russian*, 441 N.W.2d 374, 374 (Iowa 1989) (finding no abuse of discretion when the court "did not invoke, nor even mention, section 901.10").

Young points out that "[d]uring the prosecutor's sentencing recommendation, he described the firearm enhancement as 'mandatory' on three occasions." As a result, Young argues this case is similar to *State v. Ayers*, where the supreme court found a district court did not exercise its discretion in sentencing a first-time offender to a minimum sentence under section 902.7 based on both parties' errant suggestion that such a penalty was mandatory. 590 N.W.2d 25, 29 (Iowa 1999). But in *Ayers*, the district court made an express misstatement about its authority to waive the minimum sentence, informing the defendant that the court "has no discretion whatsoever" and that given "the use of a dangerous weapon the Court *has* to impose a *mandatory* minimum term of no more than five years." *Id.* at 27.

Likewise, in *State v. Moore*—another case invoked by Young—the supreme court found the district court was unaware of its discretion under section 901.10(1)

when the court did not "say or write anything noting its discretion to reduce the minimum five-year term." 936 N.W.2d 436, 439 (Iowa 2019). In that case, however, the district court specifically agreed with defense counsel's statement that there "[wasn't] too much wiggle room" for sentencing. *Id.* at 439. Distinguishing *Russian*, the supreme court found this exchange provided a clear record that the district court failed to exercise its discretion. *Id.* at 440.

We don't have that clear record here, making this case more like *Russian* than *Ayers* and *Moore*. Unlike the latter two cases, the district court did not adopt the prosecutor's mandatory language. In fact, after Young's allocution, the court asked the prosecutor to clarify his recommendation: "[W]hat is the minimum that the State's requesting?" This indicates to us that the court understood its discretion. With that requested clarification, and no affirmative evidence otherwise, Young cannot overcome the presumption of regularity. *See Smith*, 17 N.W.3d at 359 (noting a defendant must "provide a record showing that the court abused its discretion" (citation omitted)); *Ayers*, 590 N.W.2d at 29 (Iowa 1999) (explaining that "in *Russian*, we could not tell from the record whether the sentencing court was aware it had discretion," and so "the defendant had an affirmative duty to provide a record showing the district court was unaware of its discretion to apply a lesser sentence"). We accordingly reject Young's sentencing challenge and affirm his convictions and sentences.

**AFFIRMED.**

Schumacher and Buller, JJ., concurs; Tabor, C.J., specially concurs; Sandy, J., joins special concurrence.

**TABOR, Chief Judge** (specially concurring).

Justice delayed is justice denied. Not a novel concept, but applicable here. *See State v. Smith*, 957 N.W.2d 669, 684 (Iowa 2021) (Christensen, C.J., specially concurring) ("[R]egardless of the antiquity of the problem and the difficulties it presents, *the courts and the bar must do everything possible to solve it.*" (quoting *Dep't of Gen. Servs. v. R.M. Boggs Co.*, 336 N.W.2d 408, 410 (Iowa 1983))); *Bookwalter v. Steele*, No. 4:17-CV-2333 SPM, 2018 WL 3208550, at *3 (E.D. Mo. June 29, 2018) ("Petitioner has been waiting on the state court's decision for over seven years, and he should not be required to wait endlessly for a determination of his claims. That the adage 'justice delayed is justice denied' may by now be trite makes it no less true."); *In re Marriage of Seely*, No. 17-0777, 2018 WL 2725324, at *1 (Iowa Ct. App. June 6, 2018) ("It's cliché to say that justice delayed is justice denied. But it's a cliché for a reason, it's true."). Young's attorney failed to object to a faulty jury instruction on justification. The State admits the instruction was wrong. But we can't address it here because the legislature amended Iowa Code section 814.7 (2019) to prohibit our appellate courts from deciding *any* ineffective-assistance-of-counsel claims on direct appeal from the criminal proceedings. Even those claims where the record is fully developed. As our supreme court stated: "This statutory change . . . results in significant disadvantages to some defendants and can mean the difference between freedom and incarceration while the case proceeds." *State v. Macke*, 933 N.W.2d 226, 233 (Iowa 2019) (noting direct appeal is "typically a much faster vehicle for relief").

Still, this statutory change has withstood challenges. Our supreme court has upheld section 814.7 against separation of powers, due process, and equal

protection claims. *State v. Treptow*, 960 N.W.2d 98, 103–08 (Iowa 2021). And now our court rejects Young's attack on that statute under the Supremacy Clause.

In my view, Young makes a powerful case that "the Iowa legislature's determination that most ineffective-assistance-of-counsel claims are better resolved in collateral proceedings cannot countermand the Sixth Amendment's requirement that states provide indigent defendants with effective representation." But as the majority properly finds, Young's interest in vindicating his Sixth Amendment right can be diverted to postconviction proceedings without violating the Supremacy Clause. *Johnson v. Fankell*, 520 U.S. 911, 923 n.13 (1997) ("We have made it quite clear that it is a matter for each State to decide how to structure its judicial system.").

I write separately to underscore that serious doubt remains whether vindication in postconviction-relief proceedings—on a practical level—will come quickly enough to deliver justice. At oral argument, counsel for the State asserted that if trial counsel's error was blatant, the postconviction-relief petitioner could move for judgment on the pleadings and there would be "no reason" that obtaining relief would take a long time. But the State's attorney acknowledged that such expedited relief doesn't often happen in postconviction proceedings.

What does happen too often in postconviction proceedings is inordinate delay. *See, e.g.*, *Hrbek v. State*, 958 N.W.2d 779, 781 (Iowa 2021) ("For the past thirty-four years, John Hrbek has been litigating a still-pending application for postconviction relief in an attempt to vacate his convictions for two counts of murder in the first degree."); *State v. Liggins*, 978 N.W.2d 406, 436 (Iowa 2022) ("The delay [of nearly thirty years] in this case was a result of the course of appeals

and actions for postconviction relief."); *Millbrook v. State*, No. 23-1910, 2025 WL 705917, at *2 (Iowa Ct. App. Mar. 5, 2025) (noting lapse of twelve years before the district court held a hearing on postconviction-relief application); *Newman v. State*, No. 20-0555, 2022 WL 2348785, at *1 (Iowa Ct. App. June 29, 2022) (noting lapse of almost four years before the district court rejected postconviction claims of ineffective assistance of counsel); *Dockery v. State*, No. 13-2067, 2016 WL 351251, at *5 (Iowa Ct. App. Jan. 27, 2016) ("[A]lthough three attorneys were appointed to represent Dockery in the PCR action, none made any substantive filings appropriate to a PCR action during the three-and-one-half years the action was pending.").

Pushing consideration of ineffective-assistance-of-counsel claims to postconviction relief adds cases to the district court's civil docket. And, for indigent defendants, the risk of delay is fueled by the dwindling number of attorneys accepting court appointments, especially in rural counties. *See State Public Defender Contract Attorneys, Fiscal Research Brief*, Legislative Services Agency (Jan. 4, 2024) https://perma.cc/9BF3-4ADP. To be fair, policymakers have acted to address this problem. That fiscal research brief explains that the General Assembly shifted some appropriations from the Indigent Defense Fund to the State Public Defender, which has created a Wrongful Conviction Unit to take on more postconviction-relief cases. *See id.* But as an illustration of the problem, over the three years of Young's criminal case, he had six court-appointed attorneys withdraw because of case overload, conflict, impending retirement, or withdrawal from the court-appointed list, with all the continuances and delays owed to that kind of turnover. And Iowa Court Information System District Court statistical

reports show more than one-quarter of all postconviction cases decided in 2024 took more than two years to resolve. So the hope that a blatant trial error may be quickly remedied in a postconviction-relief action may prove illusory in many cases.

Which brings me to plain error. The idea is this: "while ordinarily error should be preserved, there should be some safety valve to allow substantial justice to be done even where error was not preserved." *Treptow*, 960 N.W.2d at 117 (Appel, J., dissenting). But our supreme court has refused to adopt plain error— without explaining why. *See id.* at 109 ("We have repeatedly rejected plain error review and will not adopt it now."). Meanwhile, "the vast majority of states and federal courts all embrace plain error." *Id.* at 120 (Appel, J., dissenting). So now, by Young's calculation, Iowa stands alone in offering no safety valve to allow substantial justice on direct appeal—neither plain error nor ineffective assistance of counsel. And although concentrating on his Supremacy Clause claim, Young is right that this situation leaves him—and others like him having meritorious, yet unpreserved claims from our trial courts—with no prompt remedy, no matter how obvious the mistake or how clearly it has affected their substantial rights.

A few years ago, our supreme court stopped requiring unpreserved challenges to the sufficiency of the evidence to be raised as ineffective assistance of counsel. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022) ("[T]he great purpose of our jurisprudence [is] that law and justice should be synonymous." (citation omitted)). At oral argument, the State's attorney asserted that *Crawford* takes care of most ineffective-assistance claims that could have been decided on direct appeal. Perhaps. But if fairness dictates reaching those unpreserved

sufficiency claims on direct appeal, it is hard to justify postponing consideration of a plain error in the jury instructions on justification.

In the abstract, the majority is correct that section 814.7 appears to be a neutral procedure regulating how ineffective-assistance claims are heard in Iowa. *See Howlett v. Rose*, 496 U.S. 356, 372 (1990) (recognizing states have "great latitude to establish the structure and jurisdiction of their own courts"). But realistically defendants with viable, yet unpreserved, claims will face long stretches of incarceration waiting for a court to decide whether their Sixth Amendment rights were violated. Maybe the solution is the adoption of plain error. Maybe it's more effective postconviction relief. Maybe it's increasing the supply of attorneys. In any event, those possibilities do not help Young today.